J-E03006-20

2021 PA Super 210

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY BOWENS | : | |
| | : | |
| Appellant | : | No. 341 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 23, 2017
In the Court of Common Pleas of York County Criminal Division
at No(s): CP-67-CR-0007390-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., STABILE, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

OPINION BY BOWES, J.: **FILED: OCTOBER 19, 2021**

Terry Bowens appeals from the judgment of sentence imposed after he was convicted of multiple drug and firearms offenses. We granted *en banc* review to address whether the collection of data from a cell phone that was in police custody, undertaken more than two days after the issuance of the warrant that authorized its search, required suppression of the information obtained. Upon review of that issue and others raised by Appellant, we discern no cause to disturb the trial court's suppression ruling and affirm Appellant's judgment of sentence.

## I. Facts and Procedural History

Appellant's convictions stem from a traffic stop on Route 30 in York, Pennsylvania at approximately 6:30 p.m. on October 12, 2016. At that time, Pennsylvania State Trooper Wesley Johnson, observing traffic from his marked

police cruiser, saw a gray Chrysler 200 with New Jersey plates commit a traffic violation. *See* N.T. Pretrial Motions, 4/6/17, at 4-5.[1] He activated his lights and pulled the vehicle over to find two occupants: Maxi Echevarria in the driver's seat and Appellant in the front passenger seat. *Id*. at 6-7. Echevarria produced documents revealing the vehicle was registered to his partner, Ms. Solita Thomas of New Jersey, whom he indicated had given him permission to drive it. *Id*. at 7, 11. Echevarria represented that he and Appellant were journeying from York City to Lancaster, possibly further on to Philadelphia. *Id*. at 9. Trooper Johnson ran Echevarria's information and determined that he had a suspended license and an active arrest warrant. *Id*. at 12.

Trooper Johnson then spoke with Appellant who, during the officer's interaction with Echevarria, had repeatedly put his hands out the window to signal Trooper Johnson. Trooper Johnson, based upon his experience, perceived this as an effort to interrupt his questioning of Echevarria and an "attempt to control the situation, control the information, conversation, and their environment." N.T. Trial, 9/13-15/17, at 144. Appellant offered "Terry Bowen" rather than "Terry Bowens" as his name, and also provided a birthdate that was off from the correct date by one day and one year. Appellant was

_____

[1] In discussing evidence pertinent only to Appellant's pretrial suppression motion, we rely upon the transcript from the pretrial hearing. When referencing testimony or exhibits pertinent to analyzing the sufficiency of the evidence to sustain Appellant's convictions, we cite to the trial transcript. While the overlap is substantial, it is not complete.

unable to supply a social security number. *Id*. at 145-46. Trooper Johnson requested that Appellant show him his Facebook profile in an attempt to establish his identity. Appellant used his Samsung Galaxy smart phone to access his Facebook profile, which identified Appellant as "Nino Brown." *Id*. at 147-49. Trooper Johnson eventually ascertained Appellant's identity, as well as the fact that he also had an active arrest warrant. *Id*. at 149. Appellant and Echevarria were both arrested at the scene pursuant to the outstanding warrants and their phones were seized. *Id*. at 173-74.

With the owner of the vehicle in New Jersey and both occupants of the vehicle being taken into custody, Trooper Johnson determined that the vehicle required a tow and conducted an inventory search. He discovered that the vehicle's glove box was locked. After obtaining the key,[2] permission from the vehicle's owner, and a search warrant, police searched the vehicle and seized a 9mm Ruger SR9c firearm, a .40 caliber Kahr firearm, heroin, a cutting agent, and packaging. *Id*. at 149-50. The Ruger had been reported stolen, while the serial number on the Kahr had been obliterated, preventing the police from running a query to see if it had been reported. *Id*. at 157-59.

---

[2] At the hearing on pretrial motions, Trooper Johnson explained that the vehicle's owner indicated that Echevarria should have the key, but it was not on the key fob produced by Echevarria on the scene. It was later found on his person after he was transported to central booking. *See* N.T. Pretrial Motions, 4/6/17, at 14-15.

After recovering the contraband, Trooper Johnson applied for and was issued warrants on October 14, 2016, to search Appellant's phone as well as two phones seized from Echevarria. Trooper Johnson secured the devices by putting them in airplane mode, turning them off, and wrapping them in aluminum foil to prevent the data thereon from being accessed and altered remotely. *See* N.T. Pretrial Motions, 4/6/17, at 113-14. He then immediately sent the devices to Detective Mark Baker. *Id*. at 113, 116.

Detective Baker conducted a forensic analysis of Appellant's phone, which was the only one of the three that could be analyzed using a Cellebrite Touch device. *See* N.T. Trial, 9/13-15/17, at 193-95. Detective Baker was able to access contacts, applications, texts, photos, and video on Appellant's phone. The photographic images recovered were thumbnails located in the phone's image cache directory. *Id*. at 200. The presence of an image in the cache directory did not mean that the photo was taken by Appellant's phone, as opposed to having been received by his phone via text message or other means. *Id*. at 200, 204. Rather, it meant only that the photos were viewed by the phone's user at some point, and thumbnails saved for faster repeat viewing. *Id*. at 200.

Among the nearly 4,000 images recovered were multiple selfies[3] of Appellant, selfies of people other than Appellant, and a photograph of a Ruger

---

[3] Detective Baker explained that "selfie" is a colloquial term for a photographic self-portrait. *See* N.T. Trial, 9/13-15/17, at 201.

identical to the Ruger recovered from the glovebox of the Chrysler 200. *Id*. at 199-201, 231-34, 236, 242-45. Text messages from October 8, 10, and 11, 2016, sent and received between Appellant's phone and one of the phones seized from Echevarria,[4] revealed plans to secure transportation and both 9mm and .40 caliber ammunition and travel to Lancaster to sell heroin. *See id*. at 267-81, Court Exhibit 1 at 14, 22, 44.

Appellant was charged with criminal conspiracy to commit PWID, possession of heroin, possession with intent to deliver heroin ("PWID"), possession of drug paraphernalia, possession of a firearm with an altered serial number, receiving stolen property ("RSP"), and firearms not to be carried without a license. Prior to trial, Appellant sought to suppress the images and text messages extracted from his phone, arguing that the warrant had expired prior to its execution. Unpersuaded, the trial court declined to suppress the texts between Appellant and Echevarria in the days prior to the traffic stop.[5]

At trial, Appellant's defense was that the Commonwealth's evidence failed to establish that he had anything to do with the contraband, but rather

---

[4] While the Cellebrite device was not able to obtain the data from Echevarria's sliding Kyocera phone, Trooper Johnson was able to read the text messages on the phone itself. *See* N.T. Trial, 9/13-15/17, at 234-35.

[5] The trial court did, however, preclude the Commonwealth from utilizing information that had not been on the phone before the warrant's deadline for service expired.

showed only his mere presence in the car. *See id*. at 136-38, 322. He maintained that any nervousness on his part during Trooper Johnson's traffic stop was due to the outstanding warrant against him, rather than any guilty knowledge of the contents of the glove box. *See id*. at 148, 325, 327-28. He posited that the presence of selfies of other people on his phone indicated that it was a community phone, and that the drug-related texts recovered from it were sent by one of its other users. *Id*. at 329-33. The jury nonetheless found Appellant guilty on all charges except possession of the Kahr pistol with the altered serial number.

Following a presentence investigation, the trial court sentenced Appellant to an aggregate term of fifteen and three-quarters to thirty-one and one-half years of imprisonment. Appellant filed a timely post-sentence motion in which he, *inter alia*, challenged the admission of the text messages and photographs and requested reconsideration of his sentence. The trial court denied the motion by order of January 22, 2018. Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

A three-judge panel of this Court (1) reversed the denial of Appellant's motion to suppress the evidence recovered from Appellant's smart phone; (2) granted Appellant a judgment of acquittal on his convictions for PWID, receiving stolen property, firearms not to be carried without a license, and possession of drug paraphernalia based upon lack of evidentiary sufficiency; and (3) remanded for a new trial on the conspiracy charge.

The Commonwealth filed a timely petition for reargument *en banc*. By order of March 19, 2020, this Court granted the Commonwealth's petition, withdrew the prior opinion, and directed the parties to submit argument on the following issues:

> (1) Whether the trial court erred in denying suppression of data that was copied and reviewed from a seized cell phone more than two days after expiration of the relevant warrant? and
>
> (2) If the data should be suppressed, whether the proper remedy is acquittal of the offenses due to insufficiency of evidence, or remand for a new trial?

Order, 3/19/20, at unnumbered 2. The parties filed substituted briefs arguing those issues and more. Due to the COVID-19 pandemic, oral argument was held remotely on December 3, 2020, and this appeal is ripe for our disposition.[6]

Appellant presents the following questions, which we have reordered for ease of disposition:

> [1.] Was there insufficient evidence that [Appellant] possessed the guns, drugs, and paraphernalia found in the locked glove compartment of the car he was riding in where all indicia of ability and intent to exercise dominion and control over these items related to the driver?
>
> [2.] Was there insufficient evidence that [Appellant] knew or believed the Ruger handgun was probably stolen where there was no evidence of when, where, or how the gun was stolen and its serial number was intact?

---

[6] This appeal was reassigned to the author on June 28, 2021.

[3.]   Did the trial court err in failing to suppress the fruits of a search of a cell phone backed with a warrant that had expired by the time the search was executed?

[4.]   Did the court err in finding incriminating text messages had been authenticated for use against [Appellant] where the messages did not reveal their author and evidence showed others used the phone in question?

[5.]   Did the sentencing court abuse its discretion in imposing three times the recommended incarceration, including multiple consecutive terms, based in part on convictions that were already included in [Appellant's] prior record score and the unsupported notion that [Appellant] was the leader in a criminal enterprise?

Appellant's brief at 5.

## II.   Challenges to the Sufficiency of the Evidence to Sustain Appellant's Convictions

We begin with the legal principles pertinent to Appellant's challenges to

the sufficiency of the evidence.  Our standard of review is as follows:

We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner.  We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1273-74 (Pa.Super. 2021) (cleaned up). Whether evidence was **properly** admitted does not factor into our analysis, as sufficiency is not determined upon a diminished record. *See*, *e.g.*, *Commonwealth v. Brown*, 212 A.3d 1076, 1084 (Pa.Super. 2019). Lastly, "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." *Wallace*, *supra* at 1274 (cleaned up).

  **A. The Evidence Was Sufficient to Establish that Appellant Had Possession of the Contraband**

  Appellant first challenges the adequacy of the Commonwealth's evidence to establish the possession element of each of the possessory offenses. It is well-settled that "possession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa.Super. 2018) (cleaned up). As with any element of a crime, "circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983).

  Actual possession is self-explanatory. Concerning constructive possession, our Supreme Court has explained as follows:

> Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to

reduce the item to actual possession immediately, or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

*Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019) (citations omitted). Constructive possession requires no proof that the defendant had been in actual possession of the contraband at another time. *See id*. at 1211 ("[C]ourts and prosecutors have not treated evidence of prior physical possession as a necessary prerequisite to constructive possession.").

Another basis for imputing possession by a defendant in the absence of direct evidence of actual possession is conspiracy liability. It is hornbook law that a member of a conspiracy is criminally culpable for all actions taken in furtherance of the conspiracy. *See*, *e.g.*, *Commonwealth v. Lambert*, 795 A.2d 1010, 1017 (Pa.Super. 2002) (*en banc*) ("All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action." (cleaned up)). Consequently, "successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive possession." *Commonwealth v. Perez*, 931 A.2d 703, 709 (Pa.Super. 2007).

We now apply these principles to Appellant's case. Appellant's argument as to all of the possessory offenses is that the evidence revealed only that

Appellant was present at the scene, and pointed only to Echevarria, the driver of the car and possessor of the key to the locked glove box, as the constructive possessor of the contraband recovered from the vehicle. ***See*** Appellant's brief at 49 ("[T]he Commonwealth merely proved [Appellant's] proximity to the contraband giving rise to his possessory convictions. But all indicia of actual dominion or control related only to Echevarria, or were connected to the actual contraband in the most tenuous ways."). He avers that any consciousness of guilt suggested by his evasive behavior during the traffic stop was not linked to the contraband in the glove box, but instead to the fact that there was an active warrant for him in an unrelated matter. ***See*** Appellant's reply brief at 17.

Appellant's argument fails for more than one reason. First, Appellant was convicted of conspiracy to commit PWID. Appellant does not attack the evidentiary sufficiency of that conviction,[7] and we observe that the Commonwealth's evidence amply demonstrated that Appellant and Echevarria had formed an agreement to sell heroin. Specifically, the Commonwealth introduced evidence that the following text messages were sent and received by Appellant's phone in the days before the traffic stop:

---

[7] Appellant's challenge to the evidence that sustained his conspiracy conviction is based upon his suppression argument which we address *infra*, not that there was insufficient evidence to prove the offense admitted at trial. ***See***, ***e.g.***, ***Commonwealth v. Brown***, 212 A.3d 1076, 1084 (Pa.Super. 2019) (explaining that a sufficiency review is not conducted upon a diminished record).

October 8, 2016

| | |
|---|---|
| Appellant to Echevarria:[8] | What its looking like |
| Echevarria to Appellant: | Same position |
| Appellant to Echevarria: | Damn do you have somebody that will grab a rental for us? |
| Echevarria to Appellant: | Ima ask around bro |
| Appellant to Echevarria: | Rd I got the bread |
| Echevarria to Appellant: | Im dieing down here bro... I need something to bust a jug... |
| Appellant to Echevarria: | Something like what and do you got 9 shell |
| Echevarria to Appellant: | It don't matter what it is... And Yea got u |
| Appellant to Echevarria: | I only got D until Monday I get more p's |

October 10, 2016

| | |
|---|---|
| Echevarria to Appellant: | I'm Tryin work on a wheel bro |
| Appellant to Echevarria: | Saynomore |
| Appellant to Echevarria: | See wassup wit them shells and guess who I start talking to? |
| Echevarria to Appellant: | Who that... And they 40 shell... We can go to Walmart and get them jawns our self |

---

[8] Trooper Johnson testified that the number connected to the Kyocera phone recovered from Echevarria was XXX-XXX-2007. **See** N.T. Trial, 9/13-15/17, at 234-35. The texts we identify as being to or from Echevarria were sent to or received from that number.

| | |
|---|---|
| Appellant to Echevarria: | Not me and BRI from da county |
| Appellant to unknown person: | Give me 4k for 100 b's is in your Bm car |
| Unknown person to Appellant: | Huh? |
| Appellant to unknown person: | My fault wrong person |

October 11, 2016

| | |
|---|---|
| Appellant to Echevarria: | I'm about to bag up right now ! Then we on |
| Echevarria to Appellant: | Rd |
| Appellant to Echevarria: | Bro where we going |
| Echevarria to Appellant: | Lancaster |
| Appellant to Echevarria: | Rd |
| Appellant to Echevarria: | You got tree bags ? |
| Echevarria to Appellant: | No |
| Appellant to Echevarria: | Ard what time you trying to be out? |
| Echevarria to Appellant: | Soon bro |

*See* Court Exhibit 1 at 14, 22, 44. *See also* N.T. Trial, 9/13-15/17, at 267-80.

Detective Fenstermacher was qualified as an expert in the packaging and sales of illegal drugs. *See* N.T. Trial, 9/13-15/17, at 253-54. He explained, *inter alia*, that "RD" is slang for "alright," that to "bag up" means to put bulk drugs into small bags for resale, that "9 shell" and "40 shell" indicated 9mm and .40 caliber ammunition, that "grabbing a rental" and

"working on a wheel" referred to securing a vehicle, and that "B" stands for bundle, "BM" for baby momma, and "D" for dope, particularly heroin. *Id*. at 267-80. Additionally, he testified that drug trafficking is a dangerous activity and firearms are commonly involved to protect the people, product, and money associated with the trade. *Id*. at 257-58. Ultimately, Detective Fenstermacher opined to a reasonable degree of professional certainty that the text messages amounted to "ongoing conversations between persons involved in drug trafficking . . ., particularly heroin." *Id*. at 281.

Given this evidence, Appellant's attempt to deflect culpability for possession of the contraband on Echevarria is entirely unavailing. Based upon the case law discussed *supra*, Appellant was criminally liable for the actions of his co-conspirator in furtherance of the conspiracy, including possession of the contraband.[9] *See Perez*, *supra* at 709; *Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa.Super. 2006) (holding evidence of PWID was sufficient based upon conspiracy liability although there was no evidence that the defendant possessed the drugs that were delivered by his co-conspirator).

_____

[9] The Commonwealth does not argue conspiracy liability as a basis for this Court to reject Appellant's challenge to the possession elements of the various crimes. However, at trial the Commonwealth advocated conspiracy liability as a basis for finding Appellant guilty, and the trial court instructed the jury that, if it concluded that Appellant had entered into a conspiracy, it could find Appellant guilty based upon the actions of his co-conspirator. *See* N.T. Trial, 9/13-15/17, at 339-40, 391-92.

Consequently, Appellant is just as culpable for Echevarria's possession of the drugs, paraphernalia, and guns as Echevarria himself.

Second, the certified record belies Appellant's contention that the evidence offered at trial failed to establish any connection between him and the contraband. The jury saw photographs taken from Appellant's phone of the exact model of Ruger that was found in the glove box next to Appellant's knees. **See** N.T. Trial, 9/13-15/17, at 232-33. Further, as previously discussed, the jury heard that Appellant texted Echevarria about securing 9mm and .40 caliber ammunition and the fact that Appellant himself had been bagging up bundles of heroin. Moreover, Appellant's provision of a false name and birthdate demonstrated his consciousness of guilt.[10] **See**, **e.g.**, **Commonwealth v. Cruz**, 21 A.3d 1247, 1253 (Pa.Super. 2011) (finding constructive possession of weapon demonstrated by, *inter alia*, the consciousness of guilt revealed when the defendant provided the officer with "five or six different names and multiple birthdates").

The foregoing facts allowed the jury to reasonably infer that Appellant was not merely present in the car with the contraband, but that he previously

---

[10] As noted above, Appellant maintained his mere presence defense by indicating that the outstanding warrants against him, rather than any knowledge of the contraband in the vehicle, explained his evasive tactics. **See** N.T. Trial, 9/13-15/17, at 148, 325, 327-28. However, "[t]he fact-finder need not choose between [a defendant]'s several crimes to determine whether one or more would cause" the behavior indicative of a guilty conscience. **Commonwealth v. Gomez**, 224 A.3d 1095, 1100 (Pa. Super. 2019).

had possession of the drugs, paraphernalia, and 9mm and .40 and caliber guns, or at least the ability to exercise dominion and control over all the items through obtaining actual possession of them or directing their disposition. *Compare Commonwealth v. Carr*, 227 A.3d 11, 20 (Pa.Super. 2020) (holding incarcerated defendant constructively possessed drugs that he never actually possessed but directed his girlfriend to deliver to a third party), *with Commonwealth v. Parrish*, 191 A.3d 31, 38 (Pa.Super. 2018) (concluding constructive possession was not proven where the defendant had been in the rear of a multi-passenger vehicle and the contraband was found in the front passenger side door and seat). Hence, the jury received sufficient evidence to reasonably infer that Appellant had constructive possession of the contraband.

Accordingly, we reject Appellant's contention that the Commonwealth failed to offer legally sufficient evidence to establish the possession elements of PWID of heroin, receiving stolen property, firearms not to be carried without a license, possession of heroin, and possession of drug paraphernalia.

**B.    The Evidence Was Sufficient to Establish that Appellant Had Guilty Knowledge that the Ruger Had Been Stolen**

Appellant's second sufficiency challenge relates to his RSP conviction. The offense of RSP is defined as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it

to the owner."  18 Pa.C.S. § 3925(a).  Stated differently, to sustain an RSP conviction, the Commonwealth must prove beyond a reasonable doubt "that the property was stolen, that appellant was in receipt, possession or control of it, and that appellant had guilty knowledge, that is, that he knew or had reason to know that the property was stolen."  *Commonwealth v. Grekis*, 601 A.2d 1275, 1280 (Pa.Super. 1992) (cleaned up).

Appellant challenges the evidence supporting the knowledge element of the crime.  While mere possession of stolen property is insufficient to establish such knowledge, guilty knowledge may be inferred from unexplained, or unsatisfactorily explained, possession of recently stolen goods.  *See*, *e.g.*, *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa.Super. 2002).  As with anything else, knowledge may be proven through wholly circumstantial evidence.  *Id*.  "Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime."  *Commonwealth v. Robinson*, 128 A.3d 261, 268 (Pa.Super. 2015) (*en banc*).

Appellant asserts that there was no direct evidence that he knew that the Ruger, which, unlike the Kahr, had an intact serial number, had been

stolen, and that the circumstantial evidence was not enough to move beyond the point of conjecture. *See* Appellant's brief at 51. Specifically, Appellant argues that the Commonwealth's evidence about the Ruger was simply that it had been reported stolen to the Littlestown Police Department. The jury heard no evidence regarding from whom it was stolen, when it was reported stolen, or when and how Appellant acquired it. *Id*. at 51-52. Finally, Appellant maintains that the fact that he was unable to legally purchase a firearm based upon his criminal record is not sufficient to establish that he had knowledge that the firearm was probably stolen. *Id*. at 53 (citing *Robinson*, *supra* at 271-72).

Indeed, the Commonwealth did not establish how recently the Ruger had been stolen or reported, or precisely how and when Appellant took possession of it. Therefore, Appellant's unexplained possession of the gun did not itself give rise to the inference that he knew it was probably stolen. However, we conclude that the evidence offered at Appellant's trial proved far more than mere possession of stolen property that was present in the authority relied upon by Appellant. *See*, *e.g.*, *Robinson*, *supra* at 269-70 (finding evidence insufficient where the Commonwealth offered no evidence of how recent the theft of the handgun had been, and it was found in an unremarkable location with no effort made to conceal its stolen status).

Rather, the evidence is akin to that in *Commonwealth v. Gomez*, 224 A.3d 1095 (Pa.Super. 2019), where the defendant refused to cooperate with

the officers during a routine traffic stop, declined to provide his license and registration, and used a cell phone to call an attorney. After forcibly extracting the defendant and the passengers from the vehicle, the officers recovered illicit drugs and two stolen firearms, one which had been in the vehicle's center console and one locked in a safe in a storage compartment under the driver's seat. The defendant challenged his subsequent conviction for RSP by arguing that the Commonwealth had failed to prove that he knew that the weapons were stolen, and offered no evidence of "when the firearms were stolen, where or from whom they were stolen, or for how long they were in Appellant's possession." *Id*. at 1100.

This Court found no merit in the defendant's sufficiency claim. In finding that the evidence amply demonstrated the guilty knowledge element of RSP, we relied upon the consciousness of guilt evinced by the defendant's non-cooperation, rejecting his assertion "that his behavior during the traffic stop can be explained by the other crimes he had committed." *Id*. As noted earlier, this Court observed that "[t]he fact-finder need not choose between [a defendant's] several crimes to determine whether one or more would cause [his] obstinate behavior. Rather, based on his conduct, the fact-finder was free to infer that Appellant knew or believed that the firearms were probably stolen." *Id*. We also cited the defendant's status as a previously-convicted felon who was, as a result, incapable of legally possessing a firearm. While we agreed with the defendant that his illegal acquisition of the firearms did

not necessarily prove that he knew they had been stolen, we nonetheless held that "these circumstances are sufficient to enable a fact-finder to infer that a defendant believed that the firearms were probably stolen." *Id*.

Similarly, in the case *sub judice*, the trial court opined that Appellant's knowledge of the stolen nature of the Ruger could be reasonably inferred from the fact that, because Appellant is a person who is prohibited from possessing a firearm, he was "unable to obtain any firearm legally, and would have to resort to illegitimate means and product streams to procure a firearm." Trial Court Opinion, 3/27/19, at 15. This, in conjunction with the other circumstantial evidence, was enough for the jury to conclude beyond a reasonable doubt that Appellant had guilty knowledge. *Id*.

The Commonwealth details the additional circumstantial evidence of Appellant's consciousness of guilt as follows: his attempt to insert himself into Trooper Johnson's interview of Echevarria during the traffic stop, his provision of false identification information, his secreting the Ruger in a locked compartment to prevent its detection, and its placement with Kahl handgun with the obliterated serial number. *See* Commonwealth's brief at 40-41. Regarding this last factor, the Commonwealth observes that Appellant's texts concerning 9mm and .40 caliber ammunition, combined with the proximity of the weapons to him, evidenced his constructive possession of both the stolen 9mm Ruger and the .40 caliber Kahr with the obliterated serial number. *Id*. (citing ***Commonwealth v. Grzegorzewski***, 945 A.2d 237, 240 (Pa.Super.

2008) (holding the defendant's possession of a second stolen laptop was relevant to establishing his knowledge of the stolen nature of the laptop at issue)).[11]

Therefore, the jury was not presented with the mere fact that Appellant had possession of a gun that happened to be stolen. Moreover, Appellant's attacks on the evidence address each piece of circumstantial evidence in a vacuum, contending each alone is insufficient to establish his guilty knowledge. *See* Appellant's reply brief at 18-20. However, that is not the appropriate standard for reviewing the evidence. The jury was tasked with considering the totality of the circumstances, which enabled it to reasonably infer that Appellant knew that the Ruger was probably stolen. Accordingly, we hold that Appellant's sufficiency challenge to his RSP conviction fares no better than his other sufficiency challenge and merits no relief.

_____

[11] Appellant's RSP charge related only to the Ruger, and he insists that this conviction must be based solely upon possession of that weapon, since he had been "acquitted of the offense based on the Kahr[.]" Appellant's brief at 53. We disagree. It is well-settled that "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Thomas*, 65 A.3d 939, 944 (Pa.Super. 2013). "Inconsistent verdicts, while often perplexing, are not considered mistakes . . . . Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." *Id*. (cleaned up). Thus, while Appellant was acquitted of the charge related to possession of Kahr with the obliterated serial number, the acquittal does not indicate that the jury rejected Appellant's constructive possession of it. Hence, Appellant's simultaneous possession of the Kahr may be considered as relevant circumstantial evidence in analyzing the sufficiency of the evidence to establish Appellant's knowledge of the stolen nature of the Ruger.

## III. Challenges to the Admission of Evidence at Trial

We next consider Appellant's claims assailing the trial court's evidentiary rulings. We begin by noting that "[t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." ***Commonwealth v. Hudson-Greenly***, 247 A.3d 21, 24 (Pa.Super. 2021) (internal quotation marks omitted). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will." ***Commonwealth v. Orr***, ___ A.3d ___, 2021 WL 2696496 at *4 (Pa.Super. July 1, 2021).

### A. The Trial Court Properly Refused to Suppress the Text Messages and Photos Extracted from Appellant's Phone

Appellant maintains that the evidence obtained from his cell phone should have been suppressed as the product of an illegal warrantless search. We address this question mindful of the following:

> In reviewing appeals from an order denying suppression, our standard of review is limited to determining whether the trial court's factual findings are supported by the record and whether its legal conclusions drawn from those facts are correct. When reviewing the rulings of a trial court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Our scope of review is limited to the evidence presented at the suppression hearing.

*Commonwealth v. Bellamy*, 252 A.3d 656, 663 (Pa.Super. 2021) (cleaned up).  However, "the interpretation of procedural rules is a question of law, so our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Phillips*, 141 A.3d 512, 518 (Pa.Super. 2016).

Both the Fourth Amendment to the federal constitution and Article I, § 8 of the Pennsylvania constitution prohibit unreasonable searches and seizures. *See* U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Pa. Const. Art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.").

Our Supreme Court has explained that "the twin aims of Article I, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998).  Nonetheless, no right is absolute, and the focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and

seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.Super. 2004).

Generally, searches are unreasonable unless conducted pursuant to a valid warrant supported by probable cause. *See*, *e.g.*, *Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa.Super. 2015) ("[W]arrantless searches are generally presumed unreasonable."). A warrant is valid if "(1) [p]robable cause exists, and (2) The determination of probable cause is made by the proper neutral issuing authority." *Commonwealth v. McCants*, 299 A.2d 283, 285 (Pa. 1973). It is well-settled that, even where a cell phone has already been properly seized, a search of the contents of the phone requires a warrant. *See*, *e.g.*, *Riley v. California*, 573 U.S. 373, 403 (2014); *Commonwealth v. Fulton*, 179 A.3d 475, 489 (Pa. 2018).

The constitutional protections against unreasonable searches and seizures also apply to the execution of search warrants. *See*, *e.g.*, *Commonwealth v. McDonel*, 601 A.2d 302, 306–07 (Pa.Super. 1991). "Whether the manner of execution of a search warrant is unreasonable is to be determined on a case by case basis." *Id*. at 307. Neither constitution contains any requirements about **when** a warrant must be executed. Rather, it is a question of whether the timing renders the search unreasonable. *See*, *e.g.*, *McCants*, *supra* at 287 ("Any unreasonable time lapse between the issuance of a search warrant by an independent and neutral magistrate, and

- 24 -

the use of the warrant as authority for a search by a police officer jeopardizes the validity of the warrant." (emphasis omitted)). ***See also United States v. Syphers***, 426 F.3d 461, 469 (1st Cir. 2005) (same).

The Pennsylvania Rules of Criminal Procedure regulate the issuance and execution of search warrants and offer guidance to ensure valid and proper warrants and searches. ***See*** Pa.R.Crim.P. 201-212. Pertinent to this appeal, Pa.R.Crim.P. 205, which speaks to the contents of a search warrant, provided as follows at the time the warrant for Appellant's phone was issued:[12]

> (A) Each search warrant shall be signed by the issuing authority and shall:
>
> (1) specify the date and time of issuance;
>
> (2) identify specifically the property to be seized;
>
> (3) name or describe with particularity the person or place to be searched;
>
> (4) direct that the search be executed either;
>
>> (a) within a specified period of time, not to exceed 2 days from the time of issuance, or;
>>
>> (b) when the warrant is issued for a prospective event, only after the specified event has occurred;
>
> (5) direct that the warrant be served in the daytime unless otherwise authorized on the warrant. . .;

---

[12] Technically, it was not until a subsequent amendment that the "(A)" designator was added to Rule 205, along with a new subsection (B). However, as we discuss the amendment later in this opinion, we include the (A) designation throughout to avoid confusion.

(6) designate by title the judicial officer to whom the warrant shall be returned;

(7) certify that the issuing authority has found probable cause based upon the facts sworn to or affirmed before the issuing authority by written affidavit(s) attached to the warrant; and

(8) when applicable, certify on the face of the warrant that for good cause shown the affidavit(s) is sealed pursuant to Rule 211 and state the length of time the affidavit(s) will be sealed.

Pa.R.Crim.P. 205 (effective January 1, 2014 to October 1, 2017).

Hence, Pennsylvania has a rule-based requirement that search warrants be executed no longer than two days after their issuance. However, as our Supreme Court has explained:

it is important to distinguish between a violation of the fundamental constitutional guarantees of Article I, Section 8 and mere technical noncompliance with the Pennsylvania Rules of Criminal Procedure. We have, in fact, specifically rejected the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants. Indeed, it is only when violations of the Rules assume constitutional dimensions and/or substantially prejudice the accused that suppression may be necessary.

*Commonwealth v. Ruey*, 892 A.2d 802, 808 (Pa. 2006) (plurality) (cleaned up). *See also Commonwealth v. Mason*, 490 A.2d 421, 423 (Pa. 1985) ("[W]e reject the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants.").

> A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. . . . Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized.

*Id*. at 424 (cleaned up).

With these principles in mind, we turn to the case *sub judice*. In its role as fact-finder, the trial court determined that the police took Appellant's phone into custody when he was arrested on October 12, 2016. *See* Order and Supporting Memorandum, 6/6/17, at 5. "When seized, the phone was placed into airplane mode, turned off and wrapped in aluminum foil to prevent someone else from remotely accessing the phone and altering its data." *Id*. Trooper Johnson authored an affidavit of probable cause based upon the drugs and guns obtained through executing the warrant to search the car and applied for a warrant. The warrant application identified the "items to be searched for and seized" as follows:

> Any and all evidence electronically stored content and data commonly referred to as call history consisting of dialed calls and received calls. Any and all text messaging data sent or received and the actual cellular telephone number for the seized phone. Any and all pictures, videos, address books, contacts, calendars, notes, etc.

N.T. Omnibus Pretrial Motion Hearing, 4/6/17, at Commonwealth Exhibit 5. The description of the premises or person to be searched was listed as "Grey in color Samsung Galaxy S6" and the stated current location was

"Pennsylvania State Police York Station . . . held in evidence under Property Record #H07-21597." *Id*.

The magistrate issued the warrant on October 14, 2016, indicating that it "shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than . . . 10:45 A.M. o'clock on Oct. 16, 2016." *Id*. "As soon as the search warrants were signed," Trooper Johnson delivered the phones to Detective Baker for data extraction. *See* N.T. Omnibus Pretrial Motion Hearing, 4/6/17, at 25. *See also id*. at 113 ("[I]t was dropped off immediately upon obtaining the search warrant, as I recall."); 116 (same). Detective Baker confirmed to Trooper Johnson on October 20, 2016, that the extraction had been completed. *Id*. at 106. It was through this extraction that the Commonwealth obtained the text messages and photographs discussed *supra* evincing Appellant's conspiracy with Echevarria and connection to the stolen Ruger.

Appellant's argument in favor of suppression of that evidence is as follows. He maintains that, in this case, the "relevant search was the extraction of data from the Galaxy S6, not the seizure of the phone." Appellant's brief at 30. The police had already seized the phone prior to applying for the warrant, and accordingly applied for permission to extract the data from it, not to seize the phone which they already had. Appellant thus contends that the warrant "mandated extraction of the data no later than 10:45 a.m. on October 16, 2016." *Id*. at 35. However, the data was not

extracted, and thus the search not conducted, until four days after the warrant expired. *Id*. Therefore, the search conducted in the absence of a still-valid warrant was in effect a warrantless search. *Id*. at 35-37. As such, posits Appellant, the search was illegal and its fruits must be suppressed. *Id*. at 38-39.

In sum, Appellant's position is simply that the warrant itself, as well as Rule 205(A)(4), required that the data be extracted from his phone no later than by October 16 at 10:45 a.m., and that, because it was not, the search was an illegal, warrantless search requiring suppression of its fruits. For the reasons that follow, we conclude that the warrant was timely served and executed within the applicable two-day timeframe, and that, even if were not, suppression was not an appropriate remedy.

### 1. The Warrant Was Timely Served and Executed

The language of the warrant did not specify that the search of the contents of the phone to be fully completed before 10:45 a.m. on October 16, 2016. Rather, the warrant stated that it "shall be served as soon as practicable and shall be **served** only between the hours of 6AM to 10PM but in no event later than . . . 10:45 A.M. o'clock on Oct. 16, 2016." N.T. Omnibus Pretrial Motion Hearing, 4/6/17, at Commonwealth Exhibit 5 (emphasis added). Appellant does not assert that he was not personally served with the warrant by that date, and clearly it was served upon the custodian of the phone, *i.e.*, the Pennsylvania State Police at the York Station, the moment it

was issued. *Accord Commonwealth v. Duden*, 473 A.2d 614, 622 (Pa.Super. 1984) (rejecting challenge to proper service of the warrant, as required by Pa.R.Crim.P. 2008 (now 208(A)), where the warrant for the seizure of bank records was served upon the bank's custodian of records). Hence, the record does not support Appellant's claim that the terms of the warrant itself were violated by extracting the data from the phone after the October 16, 2016 time for service of the warrant.

To the extent that Rule 205 requires that a warrant be "executed" no more than two days after it is issued, we observe that the word "execute" used in subsection (A)(4) is not defined in the Rules. *See* Pa.R.Crim.P. 103 ("Definitions"). Therefore, we must discern its meaning in this context by applying the following principles:

> The object of interpretation of the criminal rules is to ascertain and effectuate the intention of our Supreme Court, as the rule-issuing body. Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Phillips*, *supra* at 518 (cleaned up).

Appellant presents this Court with no argument concerning whether the term "execute" in subsection (A)(4) is ambiguous. It could refer to initial service of the warrant, the seizure of the item in question, the commencement of the search of a seized item, the completion of the entirety of the search, or the return of the warrant and inventory to the issuing authority as required

by Pa.R.Crim.P. 209(A). Since all these meanings are plausible, the term in this context is ambiguous.

Accordingly, we look to other sources to ascertain our Supreme Court's intent. In so doing, we consider "the language of [the rule] and its commentary, the purpose behind the rule, and our prior jurisprudence interpreting [the rule] and its predecessor." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021). Further, we presume "that our Supreme Court did not intend results which were absurd, impossible of execution, or unreasonable[.]" *Commonwealth v. Wamsher*, 577 A.2d 595, 600 (Pa.Super. 1990).

The Rules of Criminal Procedure, generally, "are intended to provide for the just determination of every criminal proceeding." Pa.R.Crim.P. 101(A). They must "be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Pa.R.Crim.P. 101(B). The Comment to Rule 205 in particular indicates the purpose of "proscrib[ing] general or exploratory searches," and otherwise providing guidance to ensure the validity of warrants. Pa.R.Crim.P. 205, *Comment*. The Comment further states as follows regarding the time for executing the warrant:

> Paragraph (A)(4) is included pursuant to the Court's supervisory powers over judicial procedure to supplement [the decision in ***McCants***, ***supra***,] holding that an unreasonable delay between the issuance and **service** of a search warrant jeopardizes its validity. Paragraph (A)(4) sets an outer limit on reasonableness. A warrant could, in a particular case, grow stale in less than two

days. If the issuing authority believes that only a particular period which is less than two days is reasonable, he or she must specify such period in the warrant.

***Id***. (emphasis added).

From this, it appears that "executed" is synonymous with "served," and the two-day constraint for execution is met if the warrant is served within forty-eight hours. Under that definition, the instant warrant was timely executed for the reason just discussed: the warrant was served on the phone's possessor when the magistrate handed it back to the police.

Deeming a warrant for the search of a phone to have been executed, at the latest, upon seizure of the phone, appears to be the prevailing view in other jurisdictions in the context of a warrant to conduct a search upon an item that had already been seized by the police. Rule 205's federal counterpart, Fed.R.Crim.P. 41, serves the same purpose as Rule 205, namely to provide guidelines for the issuance and execution of search warrants. Since 2009, that Rule has provided as follows:

*(A) Warrant to Search for and Seize a Person or Property.* Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

- 32 -

> (iii) return the warrant to the magistrate judge designated in the warrant.
>
> *(B) Warrant Seeking Electronically Stored Information.* A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. **The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media** or information, and not to any later off-site copying or review.

Fed.R.Crim.P. 41(e)(2) (emphasis added). In situations similar to the instant case, federal appeals courts have deemed the warrants timely executed even though the actual contents of the phones were not accessed or copied until after the warrant's expiration. ***See***, ***e.g.***, ***United States v. Carrington***, 700 Fed.Appx. 224, 232 (4th Cir. 2017) ("The problem with [the defendant's] argument, however, is its premise: that his phone was not 'searched' for Fourth Amendment purposes until the FBI completed its forensic analysis of the phone in October of 2014. . . . [A]n initial seizure of [the defendant's] phone after the 14-day expiration period would have contravened the terms of the warrant—but that is not what happened here, where the phone already was in government custody pursuant to a lawful seizure."); ***United States v. Huart***, 735 F.3d 972, 974 n.2 (7th Cir. 2013) (rejecting defendant's argument that "because the FBI failed to break his passcode and examine the contents of the phone before the warrant's expiration date, the search was essentially warrantless," noting that the warrant was executed pursuant to Rule 41 when the phone itself was seized by the halfway house staff prior to the warrant's

issuance). *See also United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) ("Execution of the warrant occurred when the cell phone was removed from its location and shipped to the analytics laboratory—an act that occurred prior to the warrant's deadline. It is not relevant for compliance with that deadline that the subsequent extraction occurred after the warrant's execution date." (footnote omitted)).

The many state courts which have considered the issue, viewed under procedural rules of varying similarity to our Rule 205, some of which have provisions analogous to Federal Rule 41(e)(2)(B) and some of which do not, have consistently interpreted the time of execution in accordance with the federal view. For example, in *State v. Nadeau*, 1 A.3d 445 (Me. 2010), the court rejected a suppression challenge in a similar circumstance, explaining as follows:

> The execution of a search warrant is the act of lawfully searching for and taking possession of property as authorized by the warrant. . . . [T]he officers in this case were already in possession of the computer at the time the warrant was issued. Thus, the warrant in the present case was effectively executed at the time it was issued, and there was no danger that a search for the computer conducted after the expiration of the ten-day period would result in a seizure based on stale probable cause.

*Id*. at 463. Similarly, in *People v. Ruffin*, 178 A.D.3d 455, 456, 115 N.Y.S.3d 310, 311 (N.Y. App. Div. 2019), the court affirmed the denial of a suppression motion, approving of the trial court's decision to deem a warrant for search of phones to have been executed at the time of issuance, even though the

forensic examination of the devices did not occur during the statutory ten-day timeframe, where the phone was already in police custody.[13]

We deem this view to be the most reasonable interpretation of Rule 205's timeliness concerns in connection with the execution of a warrant for data stored on a phone that is already in police custody. It does nothing to thwart the requirements of the Fourth Amendment and Article I, § 8 that a neutral magistrate determine that there is probable cause to search the contents of the phone that the police are holding before accessing it. As we discuss in greater detail *infra*, this prevailing interpretation does not give authorities *carte blanche* to delay unreasonably or to act in bad faith in finalizing the data extraction because a defendant remains free to challenge the reasonableness of the execution of the warrant on constitutional, rather than rule-based, grounds. ***See***, ***e.g.***, ***United States v. Veloz***, 109 F.Supp.3d 305, 313 (D. Mass. 2015), *aff'd,* 948 F.3d 418 (1st Cir. 2020) ("Where problems have arisen is in instances in which the government fails to

_____

[13] ***See also Ramirez v. State***, 611 S.W.3d 645, 651–52 (Tex. App. 2020) ("[T]he three-day requirement for the execution of a search warrant sets the limit for the actual search for and seizure of the evidence by a peace officer, not the timing for any subsequent forensic analysis that may be conducted on the seized evidence."); ***State v. Monger***, 472 P.3d 270, 276 (Or. App. 2020) (holding seizure of electronic devices within the applicable five-day period constituted timely execution of the warrant although the data was not analyzed until weeks later); ***State v. Sanchez***, 476 P.3d 889, 894 (N.M. 2020) ("[A] search warrant for information stored on an electronic device is executed for the purposes of Rule 5-211(C) when that device is seized or when the data stored on that device is copied on site.").

expeditiously return non-responsive information found on a seized or mirrored hard drive. But, even in these instances, a rule of reasonableness applies." (citation omitted)). However, it does recognize the logistics involved in extracting data from such devices.

Our interpretation is also consistent with the law applicable to more traditional personal effects.[14] As one court explained it, "[t]he seizure of a phone for later review of the contents by a computer team is analogous to the removal of a defendant's documents for later review of the contents by investigators." *State v. Folse*, ___ So.3d ___, 2020 WL 8770900 at *2 (La. Ct. App. Apr. 7, 2020). In such cases, the warrant is executed when the documents are seized, not when they are later examined. Further, since phones and other devices "may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution," it is unreasonable to set a rigid time limit for completion of the search. *Veloz*, *supra* at 313 (quoting *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002)).

---

[14] Appellant suggests that the notion that Rule 205's forty-eight-hour requirement applies to the seizure of the phone rather than the extraction of the data from it is not properly before us because the Commonwealth raised it for the first time on appeal. *See* Appellant's brief at 30-31. However, Pa.R.A.P. 302(a)'s "general rule that issues not raised in the lower court may not be raised on appeal applies only to appellants, not to appellees." *Yorty v. PJM Interconnection, L.L.C.*, 79 A.3d 655, 666 (Pa.Super. 2013) (cleaned up).

Additionally, once the intrusion into the person's privacy that was approved by the neutral magistrate has taken place during the specified time, subsequent analysis which places no additional burden on the person may take place beyond the expiration of the warrant. **Accord Davis v. State**, 608 S.W.3d 283, 290 (Tex. App. 2020) (holding that three-day requirement for execution of warrant applied to acquisition of a blood sample from the defendant, not the subsequent testing of the blood in connection with DWI charge).

Appellant's proposed construction, by contrast, would lead to absurd results. Under his interpretation, when authorities obtain a warrant to gather a blood or DNA sample, they must also complete forensic analysis of the DNA or blood within the warrant's two-day time limit, or repeatedly seek new warrants every day until the analysis is complete. Along those lines, any time an initial search resulted in the seizure of such evidence, *e.g.*, fingerprints from a weapon, blood from inside a vehicle, bags of suspected narcotics, or DNA samples from a rape kit, the authorities would have to complete the further analysis of the materials within forty-eight hours of the warrant's issuance. Yet Appellant has not offered, nor have we found, a single case to support such a notion.

Finally, our construction of Rule 205 to mean that a warrant to search the contents of an electronic device within the possession of the government is "executed" upon issuance is consistent with the current version of Rule 205.

Established by order of July 31, 2017, and effective October 1, 2017, Rule 205 was amended to define the term "execute" for purposes of subsection (A)(4) in a manner materially indistinguishable from the federal rule. Specifically, the rule now provides:

> (B) A warrant under paragraph (A) may authorize the seizure of electronic storage media or of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in (A)(4)(a) refers to the seizure of the media or information, and not to any later off-site copying or review.

Pa.R.Crim.P. 205(B).

Appellant protests that the amendment cannot be applied to his case retroactively.[15] *See* Appellant's brief at 32-33. In response, we note that the committee report accompanying the 2017 amendment to Rule 205 expressly stated that subsection (B) was added to "clarify" what it means to execute a warrant for phones and other devices and the data stored on them, and to "eliminate any confusion that, when a search warrant is for the seizure of electronically stored information and that information must be extracted,

---

[15] Appellant also argues that even if subsection (B) does apply, "in cases like this, where the warrant authorizes extraction of data as opposed to seizure of a phone or computer, the only reasonable interpretation of this provision is that the extraction must be performed within 48 hours, but the data extracted may be reviewed later." Appellant's brief at 33-34. We disagree. The language plainly states that the execution of the warrant takes place when the media (the phone or storage device) **or** information (the data stored on the device) is seized, not when it is later copied (extracted) or reviewed (analyzed).

reviewed or analyzed, these additional processes do not need to be performed within the period set for execution of the search warrant." 47 Pa. Bull. 4681 (August 12, 2017). As such, the amendment neither changed the substance of the rule as it already existed nor added something that did not previously pertain to its application. Instead, it was inserted to resolve the existing ambiguity that has prompted this analysis, and to make it abundantly plain that challenges like the one raised by Appellant to the timing of the execution of a warrant to access electronic data are unsustainable.

In any event, we do not base our decision today upon retroactive application of Rule 205(B). Rather, we highlight that our interpretation of the meaning of the rule's two-day requirement, which we have reached based upon application of the rules of construction to the rule as it read when the warrant in this case was issued and executed, appears to be consistent with the current version of the rule as clarified by the amendment. In other words, for the reasons extensively detailed above, we would have reached the same conclusion had the rule not been amended. As it was amended in a manner entirely consistent with our holding, there shall be a continuity in the consideration of such claims, whether future litigation involves pre- or post-amendment execution of such warrants.

Therefore, we conclude that the Pennsylvania State Police "executed" the October 14, 2016 warrant authorizing the search of Appellant's phone, already in their possession, at the time the warrant was issued. This is

consistent with the purpose of the warrant requirement, with Rule 205 and its the clarifying amendment, and with the interpretation of precedent in Pennsylvania and elsewhere. Consequently, Appellant's claim that the execution of the warrant violated Rule 205(A)(4) or the terms of the warrant itself is meritless.

### 2. Even if the Warrant's Execution Did Not Comply with Rule 205, Suppression is Not Appropriate

Even if the timing of the execution of the warrant in this case did violate Rule 205, we would nonetheless affirm the trial court's refusal to suppress the entirety of the fruits of the search. As noted above, our Supreme Court has made it clear that, "although important, the procedures required for execution and return of the warrant are ministerial and that irregularities should not void an otherwise valid search absent a showing of prejudice." ***Commonwealth v. Musi***, 404 A.2d 378, 384–85 (Pa. 1979). Stated differently,

> A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. . . . Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized.

***Mason***, ***supra*** at 424 (cleaned up).

Hence, "[w]here a rule represents a codification of [constitutional] requirements, *e.g.*, the knock and announce rule, its violation will result in exclusion of evidence." ***Commonwealth v. Johnson***, 462 A.2d 743, 748

- 40 -

(Pa.Super. 1983). "Where, however, the rule goes beyond the requirements of the [constitution], *e.g.*, verification of inventory rule or rule requiring police to leave a copy of the search warrant and affidavit, its violation will not result in suppression unless (1) there is a particular rule mandating suppression, or (2) the defendant''s constitutional rights have been otherwise violated." ***Id***.

For example, in ***Commonwealth v. Wholaver***, 989 A.2d 883, 898 (Pa. 2010), our Supreme Court held that the lack of a date on the warrant did not require suppression. The Court explained that the defendant did "not allege the reliability of the evidence seized from the home was compromised because the warrant was stale; he fail[ed] to even argue how this technical defect resulted in an unconstitutional seizure. Accordingly, this claim fails." ***Id***. at 898 (citing ***Mason***, ***supra*** at 424). Likewise, the High Court declined to find exclusion merited based upon the lack of compliance with the mandate of rule 2008 (now Rule 208) that a law enforcement officer leave a copy of the warrant with the defendant or a person present at the premises where the warrant was executed. ***See Musi***, ***supra*** at 384-85. Since there was no dispute that there was probable cause for the search and the contraband was found and seized pursuant to that search, the violation had no impact upon the reliability of the evidence seized. ***Id***.

In ***Commonwealth v. DiSantis***, 294 A.2d 798 (Pa.Super. 1972), this Court rebuffed a challenge to a search that was conducted twenty-five minutes before sunrise although the warrant called for execution "in the daytime." ***Id***.

at 799. We also dismissed a suppression challenge in *Commonwealth v. Ryan*, 446 A.2d 277, 284 (Pa.Super. 1982), where the defendant did not identify any prejudice resulting from the allegedly defective service and execution of a warrant to search his junkyard.

Here, Appellant posits that "searches conducted in violation of Rule 205(A)(4) are *per se* invalid." Appellant's brief at 37. Yet, he does not cite a single case in which evidence was suppressed because a warrant was executed more than two days after its issuance. Nor does he provide any argument or analysis of pertinent authority to suggest that the two-day limit set by Rule 205 is one of constitutional magnitude.[16] Nor does Appellant contend that

---

[16] As is revealed by our discussion of decisions of other jurisdictions, Rule 205's two-day limit is uncommonly short. Indeed, the federal equivalent of Pa.R.Crim.P. 205 sets a maximum specified timeframe for execution of a warrant to search and seize property at fourteen days. *See* Fed.R.Crim.P. 41(e)(2)(A)(i). However, under federal law, "noncompliance with Rule 41 does not automatically require exclusion of evidence in a federal prosecution. Instead, exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident." *United States v. Mutschelknaus*, 592 F.3d 826, 829 (8th Cir. 2010) (affirming denial of suppression motion where computed seized within ten days of warrant's issuance was not examined until later). *See also United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993) ("Completing a search shortly after the expiration of a search warrant does not rise to the level of a constitutional violation and cannot be the basis for suppressing evidence seized so long as probable cause continues to exist, and the government does not act in bad faith.").

Appellant offers no authority suggesting that the rule's two-day limit reflects the Pennsylvania constitution's greater protections, nor an analysis explaining why we should so hold in the instant case. *See Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991) (explaining that litigants seeking to establish that a provision of the Pennsylvania constitution provides greater
*(Footnote Continued Next Page)*

there was an unreasonable delay between the issuance of the warrant and the download and analysis of the data from his phone such that probable cause had become stale. Finally, he also fails to assert that the Commonwealth acted in bad faith or obtained any more information by conducting the download later than it would have obtained if the extraction had been timely completed, rendering him prejudiced by the delay. Rather, Appellant relies upon the untenable position that a defect in the execution of a warrant is the equivalent of a warrantless search, irrespective of whether the deviation from the execution requirements implicates constitutional concerns.

Based upon the authority discussed above, in order to merit suppression, the deviation from Rule 205 must go "to the question of the reliability of the challenged evidence" or reflect "intolerable government conduct which is widespread and cannot otherwise be controlled," with a demonstrable "relationship of the violation to the reliability of the evidence seized." **Mason**, **supra** at 424 (cleaned up). For example, when a delay between issuance of a search warrant and its execution is so long that probable cause has become stale, the warrant is rendered invalid and

protection than its federal counterpart should brief and analyze the following factors: "1) text of the Pennsylvania constitutional provision; 2) history of the provision, including Pennsylvania case-law; 3) related case-law from other states; 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence"). Accordingly, we decline to assume that the two-day limit is one of constitutional magnitude, and proceed under the general principle that a violation of a procedural rule does not *per se* mandate suppression.

suppression of the search's results is appropriate. *See McCants*, *supra* at 286-87 (suppressing fruits of search conducted upon fifteen-day-old warrant to search vacant apartment because, in such circumstances where facts and circumstances giving rise to probable cause are subject to quick change, the neutral magistrate's probable cause analysis was too remote in time). This did not occur in the case at bar.

The case most closely on point to the question of suppression based upon a Rule 205(A)(4) violation is *Commonwealth v. Knoble*, 188 A.3d 1199 (Pa.Super. 2018), a case decided after Appellant's trial.[17] In *Knoble*, the police obtained a warrant to search a murder defendant's cell phone in April 2015, and that same day sent the device to a laboratory for data extraction. An analyst was able to obtain still photos from the phone, including one depicting the murder victim face down in a pool of blood, but no video files. Nine months later, the defendant sought access to the raw data extracted from the phone to provide to his own expert. Discovering that the original data had been lost, the police opted to send the phone out for a new data extraction. They did not obtain a new search warrant. Using updated software, the analyst in January 2016 was able to recover more data than he

---

[17] While *Knoble* was decided after subsection (B) was added to Rule 205, this Court did not rely upon the amendment in rendering its decision. In fact, the opinion makes only passing reference to Rule 205 before proceeding to a *McCants* analysis. Accordingly, while the result in *Knoble* is in accord with our interpretation of Rule 205, the decision offered little to inform our construction of the rule.

had the first time around, including videos of the defendant with the bound, deceased victim narrated by the defendant.

The defendant moved to suppress the videos, claiming that the second data extraction was a warrantless search that violated his privacy rights. *Id*. at 1206. Citing Rule 205(A)(4), he argued that the delay of nine months "was well outside the outer limit of any reasonable delay between the issuance and execution of the authorizing warrant." *Id*. (cleaned up). The Commonwealth maintained that the December search was authorized by the April warrant, or, alternatively, the defendant's request for the data amounted to consent for the second extraction. *Id*. at 1206-07.

This Court declined to reach the consent argument, instead holding that the second search was properly conducted pursuant to the initial warrant. We observed that the record showed that the police had properly seized the phone in March and "secured the phone to ensure that it remained in its original condition and that no one could alter its contents." *Id*. at 1207. The magistrate determined in April that there was probable cause to search the phone and issued the warrant. The phone remained in police custody and unalterable from that time until the second data extraction. Thus, it was "evident that the facts and circumstances presented to the magistrate who issued the initial search warrant did not change." *Id*. Therefore, this Court held that the initial "search warrant authorized the subsequent search and

obviated the need for the Commonwealth to obtain another warrant." *Id*. Accordingly, we denied relief.

Here, the trial court conducted the **McCants** reasonableness inquiry and based its denial of suppression on the absence of unreasonableness and lack of staleness of probable cause at the time the data was extracted pursuant to the warrant. As the court explained:

> What is reasonable is fact specific. If the case before this court was to search a specific location to find a phone, the passage of an additional 4 days beyond a 48 [hour] warrant period could potentially be unreasonable. Due to the inherent portability of such devices, as well as their function, expecting a phone to remain in a given location indefinitely would be unreasonable. Allowing the police to select when to execute such a warrant would cede power to them to enter into private property at a time of their choosing that currently is restricted and delegated to them by a neutral and detached magistrate for finite windows of time.

> However, where the device in question is already in the possession of the police, incident to the apprehension of the defendants pursuant to an outstanding arrest warrant, it is a distinct situation. This is not a situation where police are intruding on private property as described previously to locate the device. They already possessed it incident to lawful arrest.

> What is a smart phone? It is an electronic record of calls with phone numbers indicated by date and time, a record of websites searched, of texts sent and received recorded by date and time. It is an electronic filing cabinet of information that is organized by dates and times. The same information was going to be present in that phone at the end of the 48 hour warrant as would be present 96 hours after it expired. The police placed the phone into "airplane mode," so that content could not be added or deleted, and thereby preserved its contents from changing or becoming stale. As such, the court does not find the execution of the warrant four days after its expiration to be unreasonable, or to generate the staleness concerns that would be present in other factual scenarios.

[Nonetheless], the police may not delay the execution of a warrant indefinitely or for their investigative benefit to allow more evidence to accumulate. To do so places the police in the potential position of determining the date and time of execution of a warrant to maximize their investigative advantage, rather than following the neutral and detached magistrate based upon probable cause. The court finds that there was no such intentional manipulation in this case and that the delay in executing the warrant was a production of coordination delays between the police possessing the software and expertise to do the job. Accordingly, [Appellant's] motion to suppress any information that existed within the electronic records of the phone prior the expiration of the warrant is denied. However, to preserve the integrity of the warrant process, the court grants [Appellant's] motion in part and suppresses any content, text, messages, or phone records that became part of the phones data after the expiration of the warrant.

Order and Supporting Memorandum, 6/6/17, at 9-11 (footnote and unnecessary capitalization omitted).

The trial court's factual findings are supported by the record, and it faithfully applied the law pertinent to determining whether defects in execution of a warrant required suppression of the evidence thereby obtained. As such, Appellant has failed to demonstrate that an abuse of discretion occurred. Indeed, without the benefit of our *Knoble* decision, the trial court granted Appellant more relief than was necessary. Not only did the challenged extraction in *Knoble* take place much further beyond the Rule 205 deadline than in the instant case (nine months versus four days), but the *Knoble* Court declined to suppress evidence that was only able to be obtained because of the time lapse. Here, the trial court cut the evidence off as of the time the warrant issued.

- 47 -

Therefore, even if the warrant were deemed to have been "executed" when Detective Baker extracted the data from Appellant's phone four days outside of the two-day window, suppression was not an appropriate remedy. *See Knoble*, *supra* at 1206-07. *See also State v. Johnson*, 576 S.W.3d 205, 223–24 (Mo. Ct. App. 2019) ("Because the record clearly shows that Johnson's phone was in police custody and remained unalterable during the eight months between the time it was seized and the search warrant was executed, the search warrant was not stale. The search of Johnson's cell phone complied with the Fourth Amendment.") (relying upon *Knoble*, *supra*); *People v. Raehal*, 401 P.3d 117, 124 (Colo. App. 2017) ("Here, based on an affidavit establishing probable cause, the search warrant expressly authorized the examination of any computer and storage devices for images of child pornography. Because the images could not have been altered or deleted once the camera was seized, probable cause for the search did not dissipate in the interval between the initial seizure of the camera and its subsequent search [months later].").

In sum, the extraction of the data from Appellant's phone four days after the warrant's service deadline and Rule 205(A)(4)'s execution deadline violated neither the warrant's terms nor the rule. Furthermore, even if the extraction amounted to a technical violation, suppression of the evidence was not warranted because the delay, being neither unreasonable nor prejudicial to Appellant, did not rise to a level of constitutional magnitude. Accordingly,

we affirm the trial court's June 16, 2017 order to the extent that it denied Appellant's motion to suppress the data extracted from his phone.

**B.    The Trial Court Properly Held that the Commonwealth Sufficiently Authenticated the Text Messages**

In his second evidentiary issue, Appellant contends that the text messages from his phone should not have been admitted at trial because the Commonwealth failed to authenticate them.   Authentication of evidence is required by Pa.R.E. 901, which provides that, "[u]nless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."   Pa.R.E. 901(a).   Stated differently, "[w]hen a party offers evidence contending either expressly or impliedly that the evidence is connected with a person, place, thing, or event, the party must provide evidence sufficient to support a finding of the contended connection." Pa.R.E. 901, *Comment*.

We have acknowledged that "authentication generally entails a relatively low burden of proof[.]" **Commonwealth v. Murray**, 174 A.3d 1147, 1157 (Pa.Super. 2017) (cleaned up).  "Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." **Gregury v. Greguras**, 196 A.3d 619, 633 (Pa.Super. 2018) (*en banc*).  The mechanics of authentication are as follows:

> A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder.   The trial court makes the

preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finder of fact. If that threshold is met, the jury itself considers the evidence and weighs it against that offered by the opposing party.

*Id*. at 633–34 (cleaned up).

Subpart (b) of Rule 901 provides general and specific non-exclusive examples of evidence that serves to authenticate. Pertinent to the instant case, it includes the following: "*Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4) (effective March 18, 2013 to January 1, 2020).[18] This Court first

---

[18] The current version of the rule includes a new subsection (b)(11), which provides as follows:

> (11) *Digital Evidence*. To connect digital evidence with a person or entity:
>
> (A) direct evidence such as testimony of a person with personal knowledge; or
>
> (B) circumstantial evidence such as:
>
> (i) identifying content; or
>
> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11). This amendment is consistent with the prior prevailing law, and thus could be considered in our analysis of Appellant's claim. *See* ***Commonwealth v. Collins***, 957 A.2d 237, 266 (Pa. 2008). However, "we will refrain from applying it herein, since trial took place in his case several years before the [amendment's] effective date." ***Commonwealth v. Orr***,
*(Footnote Continued Next Page)*

considered what subsection (b)(4) evidence was necessary to authenticate text messages in **Commonwealth v. Koch**, 39 A.3d 996 (Pa.Super. 2011), *affirmed by an equally divided Court*, 106 A.3d 705 (Pa. 2014).[19]

In **Koch**, the trial court admitted transcripts of drug-related text messages in a prosecution for PWID, and the defendant argued that the Commonwealth failed to establish that she, rather than another person with access to the phone, authored the messages. Observing that more than one person often has access to an email account or cell phone, we held that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Id*. at 1005. We concluded that the text messages at issue in **Koch** had been improperly admitted for want of authentication, explaining as follows:

> Glaringly absent in this case is any evidence tending to substantiate that [the defendant] wrote the drug-related text messages. No testimony was presented from persons who sent or received the text messages. There are no contextual clues in the drug-related text messages themselves tending to reveal the identity of the sender. In addition to evidence that [the

___ A.3d ___, 2021 WL 2696496 at *9 n.3 (Pa.Super. July 1, 2021). We would reach the same result applying either version of the rule.

[19] Since there was no majority opinion from our Supreme Court in **Koch**, its decision is not binding on us. **See**, **e.g.**, **Commonwealth v. Mosley**, 114 A.3d 1072, 1082 n.11 (Pa.Super. 2015) ("When a judgment of sentence is affirmed by an equally divided court, as in the **Koch** case, no precedent is established and the holding is not binding on other cases.").

defendant] identified the phone as hers, the trial court relied upon the fact that the cellular phone was found on the table in close proximity to [her]. However, we find [the defendant's] physical proximity to the telephone to be of no probative value in determining whether she authored text messages days and weeks before[, where it was acknowledged that other people used the phone in question]. On these facts, the admission of the text messages constituted an abuse of discretion.

*Id*. (citation omitted).

This Court recently conducted a thorough review of our post-**Koch** decisions concerning authentication of text messages in **Commonwealth v. Orr**, ___ A.3d ___, 2021 WL 2696496 (Pa.Super. July 1, 2021). Therein, the defendant was convicted of murdering the mother of his child, and challenged the admission of threatening text messages sent from the defendant's phone. We examined **Koch** in detail, as well as its progeny, including **Commonwealth v. Mosley**, 114 A.3d 1072 (Pa.Super. 2015); **Murray**, *supra*; **Commonwealth v. Mangel**, 181 A.3d 1154 (Pa.Super. 2018); **Commonwealth v. Talley**, 236 A.3d 42 (Pa.Super. 2020); and **Commonwealth v. Bry'Drick Wright**, ___ A.3d ___ 2021 WL 2345903 (Pa.Super. June 9, 2021). **See Orr**, *supra* at *5-*9. Our analysis led to the following conclusion:

This line of cases demonstrates that the authentication of text messages turns upon the depth of direct and circumstantial evidence of authorship marshaled by the proponent of the text messages. **Koch**, **Mosley** and **Mangel** provide examples of insufficient evidence of authorship; **Murray**, **Talley** and **Bry'Drick Wright** provide examples of sufficient evidence.

*Id*. at *9.

Ultimately, we held that the evidence in that case placed it in the latter category because "numerous circumstantial clues" demonstrated that the defendant sent the challenged text messages. In particular, we noted that there was clear evidence that the defendant owned the phone from which the messages were sent, that the phone was found among the defendant's belongings at the location where he was apprehended, and the content of the messages, namely the defendant's ongoing custody dispute with the victim, suggested that he wrote them. *Id*. at *10. Further, there was no evidence that anyone other than the defendant regularly used the phone in question, nor any indication in the record that anyone else knew about, or was upset with the victim about, the parties' custody battle. *Id*.

The trial court in the instant case concluded that the Commonwealth sufficiently authenticated the text messages, explaining its reasoning as follows:

> A key factor this court relied on in admitting the referenced text messages were their close proximity in time to the charged offenses in this case. Some of these messages were also ones that were mirrored from the phone recovered from [Echevarria] which were in close proximity to the date of the offense, and corroborated by other evidence in the case matching information linked to [Appellant]. The messages admitted into evidence appeared to deal with the preparation of the very trip and transaction from which these criminal charges arose. There was sufficient indicia of authenticity to allow the messages to be presented. Also, some of the other messages admitted reflected [Appellant]'s exclusive use of the phone. These messages were highly personal ones between [Appellant] and his girlfriend showing his control over the device in question. The phone itself was recovered from [Appellant]'s person, and no evidence at trial was presented to show that anyone but [Appellant] had used the

phone or to rebut that [Appellant] had exclusive control over this cell phone.

Trial Court Opinion, 3/27/19, at 12-13 (unnecessary capitalization omitted).

Appellant argues that the trial court's ruling was an abuse of discretion, asserting that this case falls squarely under the *Koch* and *Mosley* umbrella. Appellant acknowledges that there was circumstantial evidence in other text messages on the phone that pointed to him. However, he contends that nothing in the disputed messages themselves, *i.e.*, the messages discussing drugs and guns, identified Appellant as the sender. *See* Appellant's brief at 45. He maintains that the presence of other persons' selfies on the phone, and the fact that the response to a personal, confrontational message addressed to "Terry" was to disclaim knowledge of what the sender was referencing, "creates a strong likelihood that someone other than [Appellant] was using the phone at this time."[20] *Id*. Indeed, Appellant goes so far as to

_____

[20] The October 10, 2016 exchange was as follows:

[Third party]:    So Terry why lead me on all this time when in reality you new this isn't what you really wanted?  Why waste my time when you knew you didn't want to spend ya life with me why make it seem as if you really want this relationship !  We could've just stay friends for all this … But instead you lead me on…  Even if you knew it was another female you are interested in you could've just kept it real but it's cool

[Appellant]:       Idk what you talking about

*See* Court Exhibit 1 at 22.  From context, the response does not indicate denial of being the person to whom the message was addressed, but rather
*(Footnote Continued Next Page)*

suggest that "there was strong evidence that the phone was a 'community' phone[.]" Appellant's reply brief at 13.

Upon review of the certified record, we deem the evidence presented by the Commonwealth analogous to that which we found sufficient in *Orr*. The phone was found on Appellant's person, and other messages received in temporal proximity to the incident identify Appellant as the recipient. *See* N.T. Trial, 9/13-15/17, at 149, 173, 273-76. The content of the messages in question, as well as other information on the phone, reference the very contraband seized from the car in which Appellant was riding with Echevarria, whose phone was the other involved in the text conversation. *Id*. at 199-201, 232-33, 267-80; Court Exhibit 1 at 14, 22, 44. Further, the messages sent from Appellant's phone number were received by Echevarria's Kyocera phone, indicating that they were from "Nino," which is Appellant's nickname as established by Appellant himself when he pulled up his Facebook account on the phone in question to show to Trooper Johnson. *Id*. at 149, 234-35.

Appellant's suggestion that the presence of selfies of other people on the phone reflects that Appellant was not the sole user of the phone is a view not required by the evidence. Appellant attempted to distance himself from the photo of the Ruger and the multiple selfies of Appellant recovered from the phone by establishing that it may have been sent to him via text or other

---

disavowal of having strung the sender along while he had been interested in another woman.

means by a third party, as Detective Baker acknowledged that he had no way of confirming whether the recovered photos were taken by Appellant's phone. *See id*. at 204. However, the same is true of these selfies: these individuals may have shared their selfies with Appellant via text or email, and the thumbnail image was merely stored in Appellant's phone.

Consequently, we hold that the Commonwealth proffered a quantum and quality of evidence sufficient to meet the "relatively low burden of proof" to establish that the text messages were what they were purported to be, namely, discussions between Appellant and Echevarria concerning their ongoing drug trafficking activities. *Murray*, *supra* at 1157. The trial court did not abuse its discretion in admitting the messages into evidence, after which Appellant was free to argue his case for disregarding them to the jury. No relief is due.

## IV.  Challenges to the Discretionary Aspects of Sentencing

In his final issue, Appellant challenges the discretionary aspects of his sentence. The following legal principles govern our consideration of his claim:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question

that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Lucky***, 229 A.3d 657, 663-64 (Pa.Super. 2020) (internal quotation marks omitted). "It is well-established that where the issues raised assail the trial court's exercise of discretion in fashioning the defendant's sentence, the trial court must be given the opportunity to reconsider the imposition of the sentence either through the defendant raising the issue at sentencing or in a post-sentence motion." ***Commonwealth v. Cramer***, 195 A.3d 594, 610 (Pa.Super. 2018) (cleaned up).

Appellant filed a timely notice of appeal and a post-sentence motion seeking reconsideration of his sentence. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Therein, Appellant avers that the trial court considered improper factors in imposing consecutive sentences above the aggravated range. Specifically, Appellant asserts that the trial court considered a factor already accounted for by the guidelines, *i.e.*, his prior record, and a fact not supported by the record evidence, namely that Appellant was the main actor in the drug trafficking enterprise. ***See*** Appellant's brief at 54.

Appellant's claim that the trial court double counted his past criminal indiscretions was not raised at sentencing or in his post-sentence motion.

Therefore, it is waived.[21] *See*, *e.g.*, *Commonwealth v. Cartrette*, 83 A.3d 1030, 1043 (Pa.Super. 2013) (*en banc*) (holding issue which did raise a substantial question was nonetheless waived because it was not preserved in a post-sentence motion or at sentencing). However, Appellant's issue concerning the lack of evidentiary support for the trial court's conclusion that Appellant was the ringleader was preserved and does raise a substantial question. *See*, *e.g.*, *Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa.Super. 2010) (holding allegation that trial court relied upon factor not supported by the record evidence raises a substantial question). Thus, we proceed to consider the merits of this latter claim.

It is well-settled that, "[w]hen reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v.*

_____

[21] In any event, the claim is meritless. The trial court explained that it did not double count the fact that Appellant had a criminal history, but rather considered the fact that Appellant kept repeating the same crime as indicative of lack of remorse and rehabilitative potential. *See* Trial Court Opinion, 2/27/19, at 16-17. As the court noted, a numeric prior record score does not take into account "[r]epeat offenses of the same exact type." *Id*. at 17. We have held that, while the trial court may not consider factors utilized in the guidelines calculation as the sole basis for increasing a sentence, it may consider prior convictions as part of its assessment of the defendant's rehabilitative needs and the threat to the public posed by the defendant. *See Commonwealth v. Watson*, 228 A.3d 928, 937 (Pa.Super. 2020). Hence, even if Appellant had preserved the claim, it would not serve as a basis for relief.

*Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Accordingly, we review the sentence for an abuse of the trial court's discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

While sentencing discretion is broad, "the trial court's discretion is not unfettered." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Antidormi*, *supra* at 761 (citations and quotation marks omitted). "And, of course, the court must consider the sentencing guidelines." *Coulverson*, *supra* at 144 (cleaned up). The sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

"To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant." ***Commonwealth v. King***, 182 A.3d 449, 455 (Pa.Super. 2018). However, "the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information, or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant." ***Commonwealth v. Karash***, 452 A.2d 528, 528–29 (Pa.Super. 1982). Information outside of the record, not subject to review and dispute by the parties, is not properly considered. ***See Commonwealth v. Rhodes***, 990 A.2d 732, 746 (Pa.Super. 2009).

Appellant argues that the trial court's sentence is "improper for being based on a factually unsupported supposition." Appellant's brief at 58. He maintains that the supposition, namely that he had a "leading role in a criminal enterprise with Echevarria," is not sufficiently supported by Trooper Johnson's testimony that Appellant appeared to try to control the roadside encounter. ***Id***. at 59. Moreover, he suggests, this evidence "is surely outweighed by the fact that Echevarria secured the car, drove the car, stored all items of contraband in a locked glove compartment within the car, and kept the key to that glove compartment on his person." ***Id***. Appellant continues: "Simply put, it is impossible to believe that [Appellant], were he in a position of authority over Echevarria, would surrender so much control." ***Id***.

We readily conclude that the trial court made no improper suppositions. Appellant's attempt to control the situation after Trooper Johnson stopped the vehicle was not the only evidence of his authority. The text message exchanges between the co-conspirators quoted extensively above showed that it was Appellant who tasked Echevarria with finding the transportation and securing ammunition, while Appellant bagged the product and requested (from a wrong number) that he receive $4,000 for 100 bundles of heroin. ***See*** Court Exhibit 1 at 14, 22, 44. Hence, the record contains ample evidence to support the trial court's conclusion that Appellant was the one who controlled the merchandise and was arranging a sale.

Furthermore, it is reasonable to conclude that it is because Appellant was in a position of authority over Echevarria that he was able to take measures to distance himself from the more obvious criminal culpability. Although the efforts ultimately did not shield him from liability, one could reasonably infer that Appellant's superior role empowered him to have Echevarria do the grunt work of securing transportation and assuming the greater risk occasioned by his more obvious constructive possession of the contraband. As such, Appellant has failed to demonstrate that the trial court relied upon manifestly unreasonable conclusions or factors not supported by the record in fashioning Appellant's sentence. His final claim merits no relief from this Court.

## V.    Conclusion

In conclusion, Appellant's challenged convictions were based upon sufficient evidence.  The trial court properly denied his suppression motion because the warrant for the search of the cell phone already in police custody was "executed" the moment it was secured.  Moreover, the trial court properly admitted the challenged text messages as having sufficient indicia of authenticity.  Finally, the trial court did not abuse its discretion in determining that sentences above the guideline range were warranted in this case. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2021