J-S29035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD MARK WATKINS | : | |
| | : | |
| Appellant | : | No. 45 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 24, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001463-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:              **FILED: NOVEMBER 17, 2022**

Appellant, Edward Mark Watkins, appeals from the judgment of sentence imposed following his conviction of driving under the influence ("DUI")—controlled substance, accidents involving damage to attended vehicle or property, accidents involving damage to unattended vehicle or property, and careless driving.[1]  With this appeal, Appellant's counsel has filed an application to withdraw as counsel and an ***Anders*** brief.[2]  Upon review, we affirm the judgment of sentence and grant counsel's application to withdraw.

On March 16, 2020, Appellant drove his white sports utility vehicle ("SUV") onto the driveway of Ronald and Ann DiVecchio's home in the City of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(1)(i), 3743(a), 3745(a), and 3714, respectively.

[2] ***See Anders v. California***, 386 U.S. 738 (1967).

Erie, struck Mrs. DiVecchio's vehicle that was parked in the driveway, and pushed that vehicle into the frame of the garage. Mrs. DiVecchio's car was totaled as a result of the accident, and the house sustained significant damage. After the accident, Appellant exited his SUV, looked at the damage to his vehicle, backed his vehicle from the driveway onto the street, and then drove away. Appellant was arrested as he was driving away from the scene and taken to the hospital for a blood test, to which he consented. The test revealed the presence of Delta-9-THC, an active ingredient in marijuana, as well as two THC metabolites.

Appellant was charged with the above stated offenses, and he proceeded to trial on October 11, 2021. At the conclusion of trial, the jury found Appellant guilty of the DUI offense and accidents involving damage to attended vehicle or property and the trial court found Appellant guilty of the summary offenses of accidents involving damage to unattended vehicle or property and careless driving. On November 24, 2021, the trial court sentenced Appellant to 10 days to 6 months of imprisonment on the DUI offense, one year of probation for accidents involving damage to attended vehicle or property, and no further penalty on the remaining two offenses. Appellant filed a timely post-sentence motion, which the trial court denied on December 8, 2021. Appellant thereafter filed this timely appeal.[3]

---

[3] On January 21, 2022, counsel filed a notice of intent to file a petition to withdraw and *Anders* brief in lieu of a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(c)(4).

As stated above, counsel has filed an **Anders** brief and application to withdraw as counsel in this Court. In her **Anders** brief, counsel identifies the following issue:

> Whether the Commonwealth failed to present sufficient evidence to find the Appellant guilty beyond a reasonable doubt of driving under the influence [] and accidents involving damage to attended property?

**Anders** Brief at 3 (unnecessary capitalization omitted).

Before this Court can consider the merits of this appeal, we must first determine whether appellate counsel has satisfied all of the requirements that court-appointed counsel must meet before leave to withdraw may be granted. **Commonwealth v. Dempster**, 187 A.3d 266, 270 (Pa. Super. 2018) (*en banc*); **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

To withdraw from representing a defendant on direct appeal on the basis that the appeal is frivolous, counsel must (1) petition the court for leave to withdraw stating that she has made a conscientious examination of the record and has determined that the appeal would be frivolous; (2) file a sufficient **Anders** brief; and (3) provide a copy of the **Anders** brief to the defendant and advise the defendant of his right to retain new counsel or proceed *pro se* and raise any additional points that he deems worthy of the court's attention. **Commonwealth v. Bynum-Hamilton**, 135 A.3d 179, 183 (Pa. Super. 2016); **Goodwin**, 928 A.2d at 290.

An **Anders** brief must comply with all of the following requirements:

> [T]he ***Anders*** brief . . . must (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). If counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is wholly frivolous. ***Dempster***, 187 A.3d at 271; ***Bynum-Hamilton***, 135 A.3d at 183.

In the application to withdraw, counsel indicated that she had engaged in a thorough review of the record and determined that there are no non-frivolous grounds for the appeal. Counsel sent a letter to Appellant advising him of his right to retain new counsel or proceed *pro se* and raise any additional issues he deemed worthy of this Court's attention,[4] and counsel included with the letter a copy of the petition to withdraw and ***Anders*** brief. Counsel's ***Anders*** brief includes a summary of the relevant procedural and factual background to this case and discusses the reasons upon which counsel bases her conclusion that the appeal is frivolous, with citation to applicable

---

[4] As of the date of this decision, Appellant has not filed a *pro se* brief with this Court, nor has privately retained counsel entered an appearance on Appellant's behalf.

law. Therefore, we conclude that counsel has adequately complied with the procedural requirements for withdrawal.

We therefore proceed to conduct an independent review to ascertain whether the appeal is indeed wholly frivolous. We first consider the issue raised by counsel in the **Anders** brief and determine whether it is in fact frivolous. **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*); **Dempster**, 187 A.3d at 272. If we find that issue to be frivolous, we then proceed to conduct an examination of the record to discern if there are any other issues of arguable merit overlooked by counsel. **Yorgey**, 188 A.3d at 1197; **Dempster**, 187 A.3d at 271-72.

In her brief, Counsel addresses the question of whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant committed the misdemeanors of which the jury convicted him: DUI—controlled substance and accidents involving damage to attended vehicle or property.

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. **Commonwealth v. Smith**, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. **Id.** "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence."

- 5 -

*Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

At trial, Ronald DiVecchio testified that, at approximately 10:00 p.m. on March 16, 2020, he and his wife, Ann, were inside their home at 601 Pin Oak Drive in the City of Erie, when his wife heard a loud bang outside and asked him to investigate. N.T., 10/11/21, at 15-16, 25, 27. Mr. DiVecchio went out of his front door and saw that a white SUV had struck his wife's car that was parked in their driveway, causing significant damage to the rear of Mrs. DiVecchio's car. *Id.* at 16. In addition, the white SUV had pushed Mrs. DiVecchio's car into the frame of the garage of their house; the building was also damaged, with bricks having been dislodged. *Id.* at 17-18, 26. Mr. DiVecchio asked the driver of the white SUV if he was okay, and the driver never responded or provided Mr. DiVecchio with any of his information. *Id.* at 17-19, 23. Mr. DiVecchio testified that his wife's car was totaled as a result of the crash and that the damage to his house cost in excess of $5,000 to repair. *Id.* at 19-20.

The DiVecchios' neighbor from the across the street, Suzanne Ulrich, testified that she witnessed the collision from her porch. *Id.* at 28-30. Ms.

Ulrich stated that she saw the white SUV drive "kind of fast" along Woodbine Terrace to the 'T' intersection with Pin Oak Drive and, instead of making a left or right on that road, continued straight into the DiVecchios' driveway and into Mrs. DiVecchio's car. *Id.* at 29-32. Ms. Ulrich said that the white SUV did not appear to make any effort to stop. *Id.* at 30-31.

Ryan Ulrich, who resided in the same house as his mother, testified that he came outside after learning of the accident. *Id.* 35-36. Mr. Ulrich stated that he watched the driver of the white SUV get out after the crash, stumble around as if impaired, look at the damage to the front of the SUV, and then reenter the SUV and back it out onto the street. *Id.* at 37. Within a minute, the SUV drove off from the scene. *Id.* Mr. Ulrich described the vehicle as having its front end "pretty smashed up" with several flat tires and leaking fluids. *Id.* at 37-38.

Patrolman Anthony Fatica of the City of Erie Police Department testified that he responded to the scene of the crash. *Id.* at 43-44. Patrolman Fatica said that the damage to Mrs. DiVecchio's car was severe, and the car had to be towed from the scene while the damage to the garage was significant enough that he felt compelled to call out a city engineer to check on the structural integrity of the building. *Id.* at 45-46.

Patrolman Joshua Allison testified that he was driving along Pine Avenue on his way to assist Patrolman Fatica when he saw a white SUV with only one operational light and which appeared, from the distinctive metal-on-asphalt sound, to be driving on its wheel rims. *Id.* at 50-51, 57. Patrolman Allison,

who was aware that a white SUV was involved in the Pin Oak Drive crash, conducted a traffic stop and approached the SUV. *Id.* at 51-52. Patrolman Allison identified the driver as Appellant and detected a strong smell of burnt marijuana emanating from the vehicle. *Id.* at 52-53, 56. Appellant also appeared to be disoriented and he admitted that he "smokes weed." *Id.* at 53-54. Patrolman Allison placed Appellant under arrest for suspicion of DUI. *Id.* at 54.

Patrolman Joshua Martin testified that he transported Appellant after his arrest to the hospital for a chemical test of his blood. *Id.* at 60-62. Patrolman Martin read Appellant the prescribed warnings from the Department of Transportation DL-26 form, and Appellant agreed to submit to a blood test. *Id.* at 62-63. Patrolman Martin stated that the results of the blood test revealed the presence of detectable amounts of Delta-9-THC, one of the active ingredients of marijuana, as well as two THC metabolites. *Id.* at 65-70, 74-75. The parties stipulated to the admissibility of the lab report. *Id.* at 70-71, Commonwealth Ex. B.

Appellant testified in his defense at trial. Appellant stated that he lives in Michigan and was not familiar with the roads where the crash occurred. *Id.* at 76-78. Appellant "believed [he] might have hit a patch of something," leading to the accident. *Id.* at 77. Appellant stated that he exited his vehicle after the crash to make sure no one was hurt, spoke to Mr. DiVecchio, and asked him to call 911. *Id.* at 77-79. Appellant said that he also asked Mr.

DiVecchio to "take pictures [of his car, driver's license, and other documents to] make sure you know who I am." *Id.* at 77, 80.

Appellant said that he was concerned that the air was leaking out of his tires, and he thus asked Mr. DiVecchio if he had an air pump. *Id.* at 77, 79. When Mr. DiVecchio responded that he did not have an air pump, Appellant stated that he informed Mr. DiVecchio he was leaving to fill up his tires and then he would "hurry back" to the scene of the collision before the police leave. *Id.* at 77, 79-81. Appellant was arrested while he was driving around looking for a business with an air pump. *Id.* at 77-78.

Appellant admitted that he had consumed marijuana in the past and it was likely still in his blood system, but he said that he had last "smoked weeks ago," he was not in possession of any marijuana at the time of the accident, and he "was not high at the time." *Id.* at 78, 81, 85-87. Appellant also testified that he "ha[s] a [medical marijuana] card," but he was unsure whether he had mentioned this fact to the officers who arrested him. *Id.* at 78, 81. Appellant did not provide any further information regarding his medical marijuana card or submit his card into evidence at trial.

Upon review, we agree with counsel that the Commonwealth clearly met its burden of proving beyond a reasonable doubt that Appellant was guilty of DUI—controlled substance and accidents involving damage to attended vehicle or property. Under the DUI statute,

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle [if t]here is in the individual's blood any amount of a[] Schedule I controlled substance, as

- 9 -

defined in [] The Controlled Substance, Drug, Device and Cosmetic Act [("CSA").]

75 Pa.C.S. § 3802(d)(1)(i). Therefore, "for the Commonwealth to meet its burden of proof [under this statute], it needed to prove: (1) that Appellant was in actual physical control or operated the motor vehicle and (2) that he had a schedule I controlled substance in his blood." ***Commonwealth v. May***, 271 A.3d 475, 480 (Pa. Super. 2022). There is no requirement that the Commonwealth establish that the driver was impaired while driving. ***Id.*** Furthermore, the Commonwealth need not prove that there was any specific amount of a Schedule I drug in the driver's system. ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011). Marijuana is a Schedule I controlled substance under the CSA. 35 P.S. § 780-104(1)(iv); ***see also Commonwealth v. Watts***, ____ A.3d ____, 2022 PA Super 164, at *5 (Pa. Super. 2022).

Here, the testimony established that Patrolman Allison witnessed Appellant operating his white SUV on March 16, 2020 and conducted the traffic stop that led to his arrest. Furthermore, a consensual blood test performed after the arrest showed detectable levels of marijuana, a Schedule I controlled substance, in Appellant's system. Appellant admitted during his testimony both his operation of a vehicle and the presence of marijuana in his blood.

Furthermore, even to the extent Appellant held a valid medical marijuana card, this would not operate as a defense to the crime of DUI—controlled substance. Even after the General Assembly's enactment of the

Medical Marijuana Act ("MMA"),[5] an individual who operates or is in physical control of a motor vehicle while at the same having marijuana in the blood stream may be found guilty of DUI—controlled substance; there is no exception to the DUI statute for individuals who possess or consume marijuana in accordance with the MMA or any other state's medical marijuana program. *See Watts*, 2022 PA Super 164, at *5-6; *Commonwealth v. Dabney*, 274 A.3d 1283, 1291-92 (Pa. Super. 2022); *see also* 75 Pa.C.S. § 3810 ("The fact that a person charged with violating [the DUI statute] is or has been legally entitled to use alcohol or controlled substances is not a defense to [that] charge . . ."). "Consequently, it is illegal to drive with any amount of marijuana, medical or otherwise, in one's system." *Watts*, 2022 PA Super 164, at *6-7 (rejecting as wholly frivolous argument that driver cannot be held criminally liable under Section 3802(d)(1)(i) where he ingested marijuana while holding a valid medical marijuana card).

With respect to the offense of accidents involving damage to attended vehicle or property, Section 3743 of the Vehicle Code states:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid).

---

[5] 35 P.S. §§ 10231.101-10231.2110.

75 Pa.C.S. § 3743(a). Section 3744 provides in relevant part that "[t]he driver of any vehicle involved in an accident resulting in . . . damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving." 75 Pa.C.S. § 3744(a).

Section 3743 contains a *mens rea* element, and therefore the Commonwealth must prove that "the circumstances of the accident indicate that the defendant reasonably should have known that he or she was involved in an accident involving damage" to a vehicle or other property. ***Commonwealth v. Woosnam***, 819 A.2d 1198, 1205 (Pa. Super. 2003); ***see also Commonwealth v. Kauffman***, 470 A.2d 634, 639-40 (Pa. Super. 1983). However, the duty of the driver to stop and discharge their obligation under Section 3744 arises whenever they are involved in an accident, regardless of whether the driver "caused" the accident. ***Commonwealth v. Satterfield***, 255 A.3d 438, 448-49 (Pa. 2021) (discussing obligations to stop under Sections 3742, 3743, and 3745).

A vehicle or property is unattended within the meaning of the Vehicle Code if it is "lacking a guard, escort, caretaker or other watcher." ***Commonwealth v. Odom***, 204 A.3d 432, 435 (Pa. Super. 2019) (quoting ***Commonwealth v. Cornell***, 607 A.2d 801, 803 (Pa. Super. 1992)). "To 'attend' is to 'look after[,] take care of[, or] watch over the working of.'" ***Id.*** (quoting ***Cornell***, 607 A.2d at 803). This Court has held that a vehicle need not be driven or occupied to be "attended" within the meaning of Section

3743, but the driver must be "looking after it or watching over it" at the time of the accident. **See Cornell**, 607 A.2d at 803 (parked, unoccupied truck in driveway was not attended as driver was in nearby residence at time of collision). In the case of an accident involving damage to a building, this Court has determined that a building is "unattended" property under Section 3743 where neither the owner nor some other person responsible to watch over the building is present at the time of the collision. **See Odom**, 204 A.3d at 436 (at the time appellant crashed vehicle into 24-hour, coin-operated laundromat, the building was not "attended" under Section 3743 as the only occupants of the building were three customers of the establishment and neither the owner nor any employee of the business was present).

The evidence presented by the Commonwealth established that Appellant was involved in an accident in the DiVecchios' driveway and that this accident caused damage to "other property"—the exterior of the DiVecchios' house—and that this property was "attended" as the DiVecchios were present in their home at the time of the accident. **See** 75 Pa.C.S. § 3743(a); **Odom**, 204 A.3d at 436. It is beyond peradventure that Appellant knew or should have known that the accident caused damage to the house, as, by his own admission, he exited his vehicle and examined the scene to ensure that no one was hurt. Furthermore, while Appellant fulfilled his duty to "immediately stop . . . at the scene of the accident," the Commonwealth demonstrated that he did not "remain at the scene of the accident until he ha[d] fulfilled" his duty to provide his "name, address and the registration

number of the vehicle he is driving" to the DiVecchios.[6]   75 Pa.C.S. §§ 3743(a), 3744(a).  Therefore, the Commonwealth put forth sufficient evidence to show that Appellant violated Section 3743 when he was involved in an accident involving damage to attended property, he knew or had reason to know of the extent of the damage that resulted from the accident, and he left the scene without complying with his duty to give information under Section 3744.

Based on the foregoing, we agree with counsel that the issue concerning the sufficiency of the evidence of Appellant's DUI—controlled substance and accidents involving damage to attended vehicle or property convictions is wholly frivolous.  In addition, we have reviewed the certified record and have discovered no additional non-frivolous issues.[7]  Therefore, we grant counsel's application to withdraw and affirm the judgment of sentence.

---

[6] Although Appellant testified that he offered to let Mr. DiVecchio take photographs of his "driver's license and things like that," N.T., 10/11/21, at 80, Mr. DiVecchio's testimony that Appellant never spoke to him and never offered any information or documents to him was sufficient for the Commonwealth to meet its burden to show that Appellant failed to comply with his duty to give information.  *Id.* at 18-19, 23.

[7] We note that sufficient evidence was presented to support Appellant's summary conviction for accidents involving damage to unattended vehicle or property under Section 3745 of the Vehicle Code, 75 Pa.C.S. § 3745(a), because Appellant left the scene of the accident without providing the DiVecchios with his name, address, registration, and insurance information and Mrs. DiVecchio's unoccupied, parked car was an unattended vehicle under our caselaw.  *See Cornell*, 607 A.2d at 803.

Furthermore, although our Supreme Court has held that the unit of prosecution for the related hit-and-run offenses set forth in Sections 3742,
*(Footnote Continued Next Page)*

Judgment of sentence affirmed. Application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2022

---

3743, and 3745 is the act of leaving the scene of the accident without fulfilling one's statutory duties and therefore an individual can only be sentenced for a single violation per accident, **Satterfield**, 255 A.3d at 447-51, there is no issue here concerning the legality of Appellant's sentence as the trial court imposed no further punishment for the summary Section 3745 conviction. We additionally note that Appellant would not have been able to raise an issue with respect to the validity of his second hit-and-run **conviction** on appeal as he did not preserve that issue prior to the verdict. **See id.** at 442 n.4 (validity of second and third Section 3742 convictions could not be addressed by Supreme Court because it was not preserved at the trial court level); **Commonwealth v. Hill**, 238 A.3d 399, 408-09 (Pa. 2020) (appellant waived any complaint regarding second DUI conviction for one incident as that issue "should have been presented, at the latest, when the trial court reached its verdict"); **see also Commonwealth v. Cox**, 231 A.3d 1011, 1016 (Pa. Super. 2020) (while "this Court will overlook certain procedural deficiencies in appellant court fillings to ensure that **Anders** counsel has not overlooked non-frivolous issues," we are not permitted "to address issues that were not properly preserved in the trial court").