J-S19043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN ELIJAH RAMIREZ | : | |
| | : | |
| Appellant | : | No. 1285 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 23, 2022
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001424-2021

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED SEPTEMBER 25, 2023**

Jordan Elijah Ramirez ("Ramirez") appeals from the judgment of sentence imposed after a jury found him guilty of firearms not to be carried without a license.[1]  We affirm.

We summarize the factual and procedural background of this appeal from the record.  In May 2021, Pennsylvania State Police Trooper Ryan DeHaven ("Trooper DeHaven"), stopped a vehicle for excessive tint on a license plate cover.  **See** N.T., 5/18-19/22, at 54.  Ramirez, the driver, was the only occupant in the vehicle, which was registered to him and Yaribel Ulloa ("Ulloa"),[2] the mother of Ramirez's child.  **See id**. at 66, 91.  When Trooper

---

[1] **See** 18 Pa.C.S.A. § 6106(a)(1).  The jury also convicted Ramirez of a traffic offense not at issue in this appeal and acquitted him of a charge of person not to possess firearms.

[2] Ulloa previously went by her married name, Yaribel Del Carmen Cruz, but changed her name back to Ulloa.

DeHaven explained the reasons for the stop, Ramirez spontaneously told Trooper DeHaven that he had a family member who was a police officer in Florida. *See* Commonwealth Exhibit 7 (Dash-Cam Recording) at 4:36; *see also* N.T., 5/18-19/22, at 56-57. During the traffic stop, Trooper DeHaven learned that a court recently issued a bench warrant for Ramirez in another criminal matter. *See id*. at 58-59. Trooper DeHaven asked to search the vehicle, and Ramirez agreed. *See id*. at 61. During the search, Trooper DeHaven opened the glove compartment and found a pistol on top of an invoice, under Ramirez's name, for car repairs. *See id*. at 61-62, 66. Records indicated that Ulloa had purchased the pistol and is the registered owner. *See id*. at 67. Furthermore, although Ramirez previously had a license to carry a firearm, his license had been revoked since 2019 due to the charges in the other criminal matter. *See id*. at 45-47, 68.

Trooper DeHaven testified that Ramirez did not look surprised that there was a pistol in the glove compartment. *See id*. at 93. Throughout the stop and the search, Trooper DeHaven also saw police "memorabilia"[3] on the vehicle and a dog cage in the backseat. *See id*. at 51, 92.

---

[3] The police "memorabilia" apparently consisted of a "thin blue line" plate on the front of the vehicle. Although there may have been other stickers on the vehicle, Trooper DeHaven did not describe them, and they are not readily identifiable from the trial exhibits.

Ramirez proceeded to a jury trial, at which the Commonwealth presented the above-summarized evidence.[4] Ramirez's defense focused on a claim that he was unaware of the pistol in the glove compartment. He called Ulloa to testify at trial. Ulloa indicated she and Ramirez have a child, but, by the time of the traffic stop, they were no longer together and lived in different homes. *See id*. at 77, 82-83. She did not have a dog but stated that Ramirez owned a dog. *See id*. at 86.

The vehicle, Ulloa testified, was her personal vehicle but was unreliable, so she put Ramirez's name on the registration in case he found someone willing to purchase it. *See id*. at 87. She stated she normally used the vehicle every day and did not share it with Ramirez. *See id*. at 78, 87. She testified that hours before the traffic stop, Ramirez called her because his truck broke down and was in a repair shop. *See id*. at 78-79. She picked him up and she loaned him the vehicle for the day. *See id*. Ulloa testified she went to the scene of the stop and was "pretty sure" she told Trooper DeHaven that she recently loaned Ramirez the vehicle. *See id*. at 82. When asked at trial about the police "memorabilia" on the vehicle, Ulloa responded that she did not "even know what that is." *See id*. at 78, 88.

As to the pistol, Ulloa stated she purchased it in 2017 and had a license to carry a firearm. *See id*. at 78, 88. Ulloa explained she had the pistol because she worked at a convenience store, and she would keep it with her

---

[4] The parties stipulated that the pistol was operable. *See* N.T., 5/18-19/22, at 36-37.

when working and then lock it in the glove compartment of the vehicle after her shift. *See id*. at 87. Ulloa stated Ramirez did not know she kept the pistol in the vehicle. *See id*. Ulloa also testified she has another young child, for whom she uses a child seat. *See id*. at 82.

Trooper DeHaven testified in rebuttal. He did not recall seeing a child seat in the vehicle during the stop and the search. *See id*. at 92. He testified that Ramirez admitted he owned a dog. *See id*. Trooper DeHaven noted Ulloa came to the scene of the traffic stop, brought paperwork for the pistol, and insisted the vehicle was hers. *See id*. at 92-93. He testified nothing in his conversations with Ramirez suggested that Ramirez had recently taken possession of the vehicle from Ulloa. *See id*. at 66, 92-93.

The jury found Ramirez guilty of firearms not to be carried without a license, and, on August 23, 2022, the trial court sentenced him to serve eighteen to thirty-six months of imprisonment. Ramirez timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Ramirez presents the following issue for our review:

> Was the evidence sufficient to convict [Ramirez] of firearms not to be carried without a license wherein the Commonwealth did not establish beyond a reasonable doubt [Ramirez] had knowledge a firearm was in the glove box of the vehicle he drove?

Ramirez's Brief at 6.

Ramirez challenges the sufficiency of the evidence supporting his conviction and asserts that the Commonwealth failed to prove he constructively possessed the pistol. Our standard of review is as follows:

- 4 -

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021) (*en banc*) (internal citation omitted), *appeal denied*, 279 A.3d 508 (Pa. 2022).

Pennsylvania law, in relevant part, prohibits a person from carrying a firearm in a vehicle without a valid and lawfully issued license. *See* 18 Pa.C.S.A. § 6106(a)(1). Possession is an act requiring proof that a defendant knowingly procured or received an item or was aware of his control of an item for a sufficient period to have been able to terminate his possession. *See* 18 Pa.C.S.A. § 301(c). For the purpose of section 6106, the Commonwealth may establish the defendant was carrying a firearm by proving the defendant actually or constructively possessed a firearm. *See Commonwealth v. Muhammad*, 289 A.3d 1078, 1090 (Pa. Super. 2023). *But see Commonwealth v. Peters*, 218 A.3d 1206, 1213 (Pa. 2019) (holding that a defendant does not carry a concealed firearm when the firearm is concealed on someone else's person).

Actual possession occurs when an officer finds a firearm on the defendant's person. *See Muhammad*, 289 A.3d at 1091. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement when the defendant does not have actual possession of a firearm. *See id*.

> [T]he concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

*Peters*, 218 A.3d at 1209 (internal citations omitted).

Ramirez argues the Commonwealth failed to prove a sufficient connection between himself and the pistol to establish constructive possession.[5] Ramirez claims he had no reason to know that the pistol was in the glove compartment. Ramirez emphasizes Ulloa's testimony that she used the vehicle every day, did not share the vehicle with Ramirez, and kept the pistol in the glove compartment without Ramirez's knowledge. Further, Ramirez refers to the defense's evidence that he took possession of the vehicle from Ulloa shortly before the traffic stop.

---

[5] There is no dispute that Ramirez did not actually possess the firearm, and Ramirez does not challenge any other element of the offense. Thus, the sole issue raised in this appeal involves constructive possession.

- 6 -

Ramirez also argues the Commonwealth's evidence only included two circumstances suggesting he was aware of the pistol's presence in the vehicle and intended to exercise dominion and control over it: he was the co-owner of the vehicle; and the presence of the invoice in his name in the glove compartment. Ramirez asserts the invoice did not establish his awareness of and dominion and control over the pistol because the Commonwealth did not establish the invoice was recent.[6] Ramirez contends that cases in which the Commonwealth proved constructive possession relied on stronger circumstantial evidence of actual control such as on furtive movements, **see** Ramirez's Brief at 15 (discussing **Muhammad**), or the visibility of contraband in a vehicle. **See id**. at 18 (discussing **Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2000)).[7] Ramirez concludes that the Commonwealth only established his mere presence in the vehicle.

---

[6] Ramirez adds that Trooper DeHaven did not testify about how he accessed the glove compartment and speculates that the glove compartment could have been locked, which would be consistent with Ulloa's trial testimony. The presence of the pistol in a locked glove compartment, Ramirez asserts, bolsters his claim that he was unaware he was carrying a pistol in the vehicle.

[7] Ramirez equates the Commonwealth's evidence in this case to **Commonwealth v. Spencer**, 621 A.2d 153 (Pa. Super. 1993), wherein this Court concluded that a passenger in a vehicle did not constructively possess contraband in a center console, when the contraband clearly belonged to the driver and the Commonwealth presented no evidence establishing the passenger knew the contraband was in the vehicle. **See Spencer**, 621 A.2d at 155. **Spencer** is distinguishable because that case involved the culpability of a passenger when there was another occupant in the vehicle. **See id**. Here, Ramirez was the driver and only occupant of the vehicle.

The trial court concluded there was ample evidence that Ramirez knew that the pistol was in the glove compartment and had the power and intent to exercise control over it. *See* Trial Court Opinion, 11/3/22, at 6. The trial court noted the circumstantial evidence, including the police "memorabilia" on the car, the presence of a dog cage, the invoice in his name, and Ramirez's statements and conduct during the traffic stop, and concluded those circumstances established a basis for the jury to find constructive possession. *See id*. at 6, 8.

Upon review, we conclude that Ramirez's sufficiency of the evidence claim merits no relief. Ramirez's reliance on his own evidence contradicts our standard of review, which requires that we review the record in a light most favorable to the Commonwealth and draw all reasonable inferences in the Commonwealth's favor. *See Bowens*, 265 A.3d at 740-41; *accord Commonwealth v. Antidormi*, 84 A.3d 736, 757 (Pa. Super. 2014) (noting that a jury is free to reach its own conclusions regarding the credibility of the Commonwealth's and defense's witnesses).[8] Moreover, this Court has noted, "[t]he fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its

_____

[8] We note that Ramirez's arguments relying on Ulloa's testimony go to the weight rather than the sufficiency of the evidence. *See Commonwealth v. McClellan*, 178 A.3d 874, 880 (Pa. Super. 2018). However, Ramirez did not raise a weight of the evidence challenge to the verdict in the trial court, *see* Pa.R.Crim.P. 607(A) (requiring that a weight of the evidence claim be raised with the trial judge in a motion for a new trial), and he does not attempt raise a weight of the evidence claim in this appeal.

presence." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996).

Here, drawing all reasonable inferences in the Commonwealth's favor and mindful that the jury was free to reject the defense's evidence, the record showed that Ramirez was the sole occupant and the co-owner of the vehicle. ***See*** N.T., 5/18-19/22, at 66, 91. Ramirez's statements to Trooper DeHaven indicated that the vehicle was his and he drove it frequently. ***See id***. at 66, 92. The vehicle had on it police "memorabilia," with which Ulloa, the purported regular user of the vehicle, was unfamiliar. ***See id***. at 51, 88. However, Ramirez, during the traffic stop, explained that that he had a family member in law enforcement. ***See*** Commonwealth Exhibit 7 (Dash-Cam Recording) at 4:36. The evidence also established that Ramirez, not Ulloa, owned a dog, and the presence dog cage in the backseat confirmed that he had personal possessions in the vehicle. ***See*** N.T., 5/18-19/22, at 51, 86, 92. The invoice in his name, which was underneath the pistol in the glove compartment, further evidences that he was responsible for repairs to the vehicle. ***See id***. at 66, 92. Critically, when Trooper DeHaven found the pistol in the glove compartment, Ramirez did not appear surprised. ***Id***. at 93.

We conclude that the record established a sufficient basis for the jury to conclude that Ramirez was the principal user of the vehicle and had control over the items contained in the vehicle. Furthermore, the jury was entitled to find that the pistol was located in an area usually accessible only to the Ramirez and infer that Ramirez knew of the pistol's presence in the glove

compartment. *See Haskins*, 677 A.2d at 330. For these reasons, we discern no merit to Ramirez's claim that the Commonwealth failed to prove his constructive possession of the pistol.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/25/2023