J-A22026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :             PENNSYLVANIA
                                           :
            v.                             :
                                           :
                                           :
MARCEL NICOLAI QUARTO          :
                                           :
           Appellant                 :     No. 2960 EDA 2024

Appeal from the Judgment of Sentence Entered October 7, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004889-2022

BEFORE: LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:              **FILED OCTOBER 15, 2025**

Marcel Nicolai Quarto ("Quarto") appeals from the judgment of sentence imposed following his conviction for possession with intent to deliver cocaine and fentanyl ("PWID").[1] After careful consideration, we affirm.

In 2022, Trooper Benjamin J. Eppley ("Trooper Eppley"), of the Pennsylvania State Police, along with his partner, conducted a traffic stop of Quarto's vehicle after discovering that he had an active arrest warrant. When Trooper Eppley approached the passenger side of the vehicle, he noticed that the female passenger, Christi Novak ("Novak"), was shoving items under her seat. The trooper also observed that she had in her lap an orange "trash can," which the trooper recognized as an item that is typically used to store crack

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(30).

cocaine and crystal methamphetamine. Trooper Eppley took Quarto into custody and, when performing a protective search of his person, located a single cell phone on his person. *See* N.T. (Preliminary Hearing), 10/31/22, at 22-23. The trooper determined that the female passenger also had an outstanding arrest warrant, and upon her arrest police discovered fifty-six vials of crack cocaine on her person.[2] Police then obtained a search warrant for Quarto's vehicle and, when they executed it, they found a fanny pack and a pink backpack in the trunk of the vehicle which contained male clothing as well as significant amounts of crack cocaine, fentanyl, and drug paraphernalia. *See id*. at 27-28.[3] Police also found approximately $4,300 in U.S. currency wrapped in rubber bands in the center console of Quarto's vehicle. *See id*. at 26-27. Police then charged Quarto with PWID, possession of a controlled substance, and possession of drug paraphernalia.

Trooper Eppley then applied for a search warrant for the Samsung cell phone based on the trooper's experience and knowledge that criminals

---

[2] Trooper Eppley indicated that he did not recall that Novak had a cell phone at the time of her detainment and arrest. *See* N.T. (Preliminary Hearing), 10/31/22, at 36. The trooper further indicated that, if Novak had a cell phone in her possession, he would have applied for a warrant to search the contents of her phone. *See id*. However, he only applied for a single warrant to search Quarto's phone. *See id*.

[3] When searching the interior of the vehicle, police found drug paraphernalia under the front passenger seat, where Novak had been sitting, including a crack pipe, a small amount of crack cocaine, and drug paraphernalia. *See* N.T. (Preliminary Hearing), 10/31/22, at 25-26.

regularly utilize cell phones to arrange for the purchase and sale of narcotics.

In his affidavit of probable cause for the search warrant, the trooper attested

to the following:

> Your affiant, Trooper Benjamin J. EPPLEY, is a member of the Pennsylvania State Police, Troop-K, Media barracks. I have been employed by the Pennsylvania State Police since October of 2018.
>
> I have conducted over one thousand (1,000) motor vehicle stops related to Pennsylvania Title 75 and made over one hundred and fifty (150) arrests related to Pennsylvania Title 18 Crimes Code and Title 35 Health and Safety Controlled Substance Drug Device and Cosmetic Act while employed with the Pennsylvania State Police.
>
> In my time as a State Trooper, I have conducted various criminal and non-criminal investigations, including narcotics offenses, firearms offenses, wanted persons, driving while under the influence offenses, theft offenses, and motor vehicle code violations. I served 90 days assisting the Bureau of Criminal Investigation, the Philadelphia State Police Crime Unit, and the Philadelphia State Police VICE Unit as a member of Troop-K's Crime Reduction Team. I have 108 hours of Highway Interdiction Training; Proactive Patrol (18 hours), Interdiction Mastermind (8 hours), DEA Pipeline Training (24 hours), Looking Beyond the Traffic Stop (24 hours), Safe Highway Initiative through Effective Law Enforcement and Detection SHIELD (36 hours), and 40 hours of training regarding Interview and interrogation of Criminal Suspects.
>
> I have personally participated in the investigation described herein. Probable Cause belief is based upon the facts set forth below your Affiant obtained from personal observations. The below information is set for solely for the purposes of establish[ing] probable cause regarding the application of a search warrant and does not represent the totality of information possessed about these facts.
>
> Your affiant is a member of the Pennsylvania State Police, Troop-K, Media barracks. On 09/04/2022[,] I was working an assigned 23:00-07:00 hours midnight shift. I was a passenger in

a marked State Police vehicle (K2-20) and in full uniform. My partner that night was Trooper Ross GREENWOOD.

On 09/04/2022 at 03:53 hours, I conducted a traffic stop on Interstate 95 southbound at mile marker 5.3, Chester City, Delaware County after observing the vehicle's owner, Marcel QUARTO, had an active warrant for his arrest. After conducting this stop, I approached the vehicle's passenger side and observed a white female, later identified via her Pennsylvania photo identification as Christi NOVAK[,] shoving items under her seat. I observed an orange "trash can," a plastic container commonly used to store crack cocaine and crystal methamphetamine, on NOVAK's lap.

I requested QUARTO and NOVAK exit the vehicle, to which they complied. QUARTO was detained pending confirmation of his warrant. NOVAK was identified via her name and date of birth. A CLEAN/NCIC query of this information related active warrants for her arrest. She was subsequently detained pending confirmation of her own warrants. Once all warrants were confirmed[,] QUARTO and NOVAK were taken into custody.

I asked QUARTO to search the interior of his vehicle for any narcotics or other drug paraphernalia after observing the trash can on NOVAK's lap. QUARTO denied my request to search. The vehicle was subsequently towed to PA State Police, Troop-K, Media barracks[,] pending a search warrant application.

NOVAK and QUARTO were transported to PA State Police, Troop-K, Media barracks for processing and arraignment. While in custody[,] 56 orange plastic vials containing suspected crack cocaine were located on NOVAK's person.

The suspected crack cocaine was placed into evidence under property record K02-35662 to await laboratory analysis.

On 09/07/2022 at 08:00 hours[,] the search warrant was executed on the vehicle associated with this incident. This search yielded an additional 571 orange containers of suspected crack cocaine, 223 unstamped baggies of suspected fentanyl, 55 baggies of suspected fentanyl stamped "Modema," 37 crack pipes, bulk U.S. currency, 23 black rubber bands, 6 yellow rubber bands, 1 purple stun gun, 3 used hypodermic needles, 40 sealed

hypodermic needles, 1 silver [S]amsung smartphone, and bulk drug packaging material.

Based on the above listed facts and circumstances, and the knowledge that criminals regularly utilize cellular communications devices to organize and schedule the purchase[] and sale of narcotics and narcotics paraphernalia[,] I respectfully request a search warrant be issued for the silver [S]amsung smartphone seized as a result of this case.

Affidavit of Probable Cause, 11/7/22, at 2-3.

Based on the contents of the affidavit of probable cause, a magistrate approved the warrant to search the contents of Quarto's cell phone. The search of the cell phone revealed numerous text messages consistent with drug trafficking, and two photographs that matched the drug packaging materials found in the vehicle. Quarto moved for suppression on the basis that the affidavit of probable cause to search the contents of the cell phone found in his vehicle failed to establish a nexus between the cell phone and the crimes charged. At the suppression hearing, defense counsel argued that because the trooper indicated in the affidavit that the Samsung cell phone was found in the vehicle,[4] and did not specify in the affidavit where in the vehicle either the phone or the drugs were located, the affidavit failed to establish a nexus between the phone and the drugs. The trial court denied suppression.

---

[4] As noted above, Trooper Eppley testified at the preliminary hearing that Quarto's cell phone was found on his person, not in the vehicle. *See* N.T. (Preliminary Hearing), 10/31/22, at 22-23. The trooper also testified at the preliminary hearing that almost all of the crack cocaine, fentanyl, and drug paraphernalia was found in the trunk of the vehicle. *See id*. at 27-28.

The matter thereafter proceeded to a non-jury trial at the conclusion of which the trial court found Quarto guilty of PWID. On October 7, 2024, the trial court sentenced him to two years of probation with the first six months to be served on electronic home monitoring. Quarto filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Quarto raises the following issue for our review: "Whether the lower court erred by denying . . . Quarto's suppression motion, where the affidavit of probable cause to search the contents of a cell phone found in his vehicle failed to establish a nexus between the phone and the suspected crime committed." Quarto's Brief at 2.

Our standard of review for the denial of a suppression motion is well-settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures.  Accordingly, where a cell phone has been properly seized, a search of the contents of the phone requires a warrant.  *See Commonwealth v. Bowens*, 265 A.3d 730, 747 (Pa. Super. 2021).  A search warrant is valid if: (1) probable cause is found to exist; and (2) the determination of probable cause is made by the proper neutral issuing authority.  *See id*.  The affidavit of probable cause must provide the magistrate with a substantial basis for determining the existence of probable cause.  *See Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018).  Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.  *See id*.  In issuing a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *See Commonwealth v. Gray*, 503 A.2d 921, 925 (Pa. 1985).  In determining whether the warrant is supported by probable cause, the magistrate may not consider any evidence

outside the four-corners of the affidavit. *See Commonwealth v. Rapak*, 138 A.3d 666, 671 (Pa. Super. 2016).

The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *See Gray*, 503 A.2d at 925. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner. *See Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001). When considering whether probable cause exists, we consider the totality of the circumstances. *See Gray*, 503 A.2d at 926.

A request to search a cell phone must provide a link between the cell phone and the crimes listed in the warrant. *See Commonwealth v. Johnson*, 240 A.3d 575, 587 (Pa. 2020) (plurality) (holding that "where law enforcement seeks to search a person's cell phone based on the person's mere proximity to illegal contraband, some link sufficient to connect the two must be provided in the affidavit of probable cause"). Indeed, even when there is probable cause to suspect the defendant of a crime, police may not search his or her cell phone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there. *See id*. at 587-88.

In *Johnson*, police received an anonymous call that shots had been fired inside an apartment. When police responded, they smelled a strong odor

of burning marijuana emanating from the apartment. After knocking on the apartment door for several minutes, a woman answered the door. Police then conducted a protective sweep of the apartment, during which they observed two bricks of heroin and located three stolen firearms. Police arrested the five individuals who were inside the apartment, including Johnson. At the time of his arrest, Johnson had two cell phones on his person. When police executed a warrant to search the apartment, they found 717 stamp bags of heroin. Police later sought and obtained a warrant to search the contents of Johnson's cell phones. Johnson filed a motion to suppress which the trial court denied. Ultimately, the trial court found him guilty of possession with intent to deliver the heroin and possession of heroin. On appeal to our Supreme Court, a plurality of the Court determined that the affidavit of probable cause failed to establish a link between the cell phones and the crimes listed in the warrant. In so ruling, the High Court stated:

> . . . Notably, appellant's cell phones were discovered on his person, and the affidavit does not otherwise allege he was personally in possession of (or even aware of) the drugs, guns, or anything else related to criminal activity found in the apartment. There is also no indication whatsoever regarding who leased the apartment or appellant's relationship to that individual, and there is no information about the frequency with which appellant visited the apartment or the duration of time he was present on the night in question. As well, since the circumstances that led police to the apartment in the first place were emergency-related, the affidavit lacked the type of more extensive information that frequently attends search warrants in longer-term drug trafficking investigations, such as evidence regarding controlled purchases. Whereas those cases commonly include evidence demonstrating that the target dealers "use cell phone functions — particularly text messages — to conduct their illegal operations," Gershowitz,

> The Post-*Riley* Search Warrant Protocols and Particularity in Cell Phone Searches, 69 VAND.L.REV. 585, 589 (2016), there is no information of this sort contained in the instant affidavit. Simply put, the affidavit of probable cause in this case provides little more than the bare fact that appellant was present in a place where illegal contraband happened to be found. That fact, in and of itself, cannot supply probable cause for a search of appellant's cell phone.

*Id*. at 588.

Quarto contends that the search of his cell phone was unreasonable because there was no evidence suggesting he was engaged in drug dealing or otherwise linking his cell phone to any criminal activity. Quarto asserts that the affidavit gave no information about Quarto's relationship with his passenger, Novak. Quarto submits that the affidavit of probable cause indicated that Trooper Eppley observed Novak shoving items under her seat and that he also observed a plastic container used to store crack and crystal methamphetamine on her lap. Quarto maintains that the reasonable interpretation of such evidence was that Novak, not Quarto, was a drug trafficker. Quarto points out that there was no contraband on his person, and there was no evidence that the troopers found illegal contraband on or around the driver's seat where he was sitting. Quarto further argues that the affidavit lacked additional pertinent information, such as: (1) details about where the drugs, other contraband, or Quarto's cell phone were located; or (2) where in the vehicle the authorities found the contraband in relation to Quarto's cell phone. Quarto claims that the absence of this information was fatal to the affidavit's establishment of probable cause.

Quarto further argues that the trial court incorrectly distinguished *Johnson*. Quarto submits that, as in *Johnson*, the affidavit in this case was devoid of a connection between the drugs and his cell phone. According to Quarto, the affidavit of probable cause provided little more than the fact that Quarto was present in a place where troopers happened to find narcotics and other contraband. Quarto maintains that this fact did not supply probable cause for a search of his cell phone.

The trial court considered Quarto's issue and determined that it lacked merit. The court reasoned:

> The affidavit of probable cause for the search warrant of the silver Samsung . . . smartphone contained information describing the stop of Quarto's vehicle. The vehicle was stopped by Trooper . . . Eppley, a member of the Pennsylvania State Troopers since 2018. [Quarto], the owner of the vehicle, had an outstanding warrant. Upon approach, the passenger, . . . Novak, was observed shoving items under her seat and an "orange trash can" commonly used to store crack cocaine and crystal methamphetamine, on her lap. Novak also had an outstanding warrant. They were both placed in custody. The trooper asked for consent to search the vehicle; which [Quarto] did not provide. A search of Novak yielded 56 orange plastic vials of suspected crack cocaine. A search warrant for the vehicle was obtained. The search of the vehicle yielded the silver Samsung . . . smartphone along with 571 orange containers of suspected crack cocaine, 223 unstamped baggies of suspected fentanyl, 55 baggies of suspected fentanyl stamped "Modema," 37 crack pipes, bulk U.S. currency, 23 black rubber bands, 6 yellow rubber bands, 1 purple stun gun, 3 used hypodermic needles, 40 sealed hypodermic needles, and bulk drug packaging material.
>
> The affidavit of probable cause for the cellphone also provided information based on the knowledge and experience of the trooper, that "criminals regularly utilize cellular communications devices to organize and schedule the purchase and sale of narcotics and narcotics paraphernalia."

- 11 -

> Unlike in ***Johnson***, [Quarto] was the owner of the vehicle and was driving the vehicle at the time. The court finds it hard to believe that [he] was unaware that a massive quantity of drugs and paraphernalia were in his vehicle. Unlike in ***Johnson*** where the defendant was merely present in an apartment that he could not otherwise be linked to, [Quarto] owned the vehicle and was driving it. Defense counsel argues that the nexus between the phone and the illegal contraband is lacking as the affidavit fails to state where in the vehicle the phone was found. The court does not find this argument particularly persuasive. Whether the phone was found on top of the drugs or on the other side of the vehicle far away from the drugs is not fatal to the search warrant. There is still a fair probability that [Quarto] knew the phone and the drugs were in his vehicle and that the phone would provide information regarding the distribution of the drugs.

Finding of Fact and Conclusions of Law, 9/18/24, at 4-6 (unnecessary capitalization and paragraph numbers omitted).

Based on our review, we conclude that the trial court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct. Here, in the affidavit of probable cause, Trooper Eppley attested that Quarto was the owner of the vehicle in which he was stopped. The affidavit additionally indicated that a lawful search of Quarto's vehicle yielded, *inter alia*, 571 orange containers of suspected crack cocaine, 223 unstamped baggies of suspected fentanyl, fifty-five baggies of suspected fentanyl stamped "Modema," thirty-seven crack pipes, bulk U.S. currency, twenty-three black rubber bands, six yellow rubber bands, one purple stun gun, three used hypodermic needles, forty sealed hypodermic needles, and bulk drug packaging material. Finally, the trooper attested to his knowledge, as an experienced law enforcement officer with several years of experience and over

one hundred and fifty arrests, that criminals regularly use cell phones to organize and schedule the purchase and sale of narcotics and narcotics paraphernalia.

Unlike in **Johnson**, Quarto was not a mere guest in someone else's apartment at an inopportune moment in time. Rather, Quarto was operating a vehicle that he owned and over which he had possession and control. The sheer volume of the narcotics found in Quarto's vehicle — more than eight hundred of baggies of crack cocaine and fentanyl — suggested that they were not for his personal consumption. Moreover, the crack cocaine and fentanyl were packaged into individual baggies in a manner that is consistent with the trafficking and sale of such narcotics, and the presence of additional packaging materials suggested that Quarto had engaged in the process of individually packaging the narcotics for the purpose of trafficking and selling the individual baggies. Further, the presence of large quantities of devices used to ingest crack cocaine and fentanyl, *i.e.* thirty-seven crack pipes and forty sealed hypodermic needles, additionally suggests that Quarto was not only trafficking these narcotics, but was also providing purchasers with a means to do so. Finally, the presence of bulk U.S. currency was also suggestive that Quarto was engaged in drug trafficking, as was the presence of a stun gun for protection during drug transactions.

Viewing all the facts and circumstances set forth in the affidavit, including the veracity, experience, and basis of knowledge of the trooper, we

conclude that the magistrate made a practical, common-sense, non-technical decision that there was a fair probability that Quarto was engaged in the trafficking and sale of narcotics and that evidence of such activities would be reflected in the contents of his cell phone. We further conclude that the trial court's determination that the affidavit of probable cause established a nexus between the cell phone and the crimes charged (*i.e.*, PWID, possession of a controlled substance, and possession of drug paraphernalia) is supported by the record and free from legal error. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025